ROBERT LEE HAWKINS V. TERRY LYNN EHLER

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-293-CV

ROBERT LEE HAWKINS APPELLANT

V.

TERRY LYNN EHLER APPELLEE

------------

FROM THE 367
TH
  DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

The parties in this marital property case entered into a mediated settlement agreement (the agreement) that purported to settle all disputes between Terry Lynn Ehler, Appellee, and Robert Lee Hawkins, Appellant.  After the parties signed the agreement, Appellee filed motions with the trial court in order to enforce it and to have the court rule on issues she claimed were outside of the agreement.  The trial court ruled in favor of Appellee on the majority of the issues and awarded her attorney’s fees.  Appellant appeals raising seven points:  1-2) the decree of divorce and the trial court’s conclusion of law number 10 were incorrect and erroneous as a matter of law because the parties had agreed to a consent judgment approving the agreement and because the trial court rendered judgment approving the entirety of the agreement; 3) the trial court erred in overruling Appellant’s motion for new trial, motion to modify the judgment, and motion to reform the judgment because the decree of divorce did not conform to the trial court’s oral rendition of the judgment approving the entirety of the agreement; 4) findings of fact numbers 18 and 19 and conclusions of law 6, 7, 8, and 10 and all implied findings of the court below were erroneous as a matter of law or, in the alternative, against the great weight and preponderance of the evidence; 5) the trial court’s conclusion of law number 10 was incorrect and erroneous as a matter of law because Appellant was the prevailing party at trial; 6)the trial court’s conclusions of law numbers 8 and 10 were incorrect and erroneous as a matter of law because the court below was barred from holding Appellant in constructive contempt without adequate notice and a hearing; and 7) the trial court’s findings of fact number 23 and conclusions of law number 11 and 12 were incorrect and erroneous as a matter of law because Appellant’s corrected special warranty deed did convey fee simple title to Appellee.  We affirm.

FACTS

Appellee and Appellant married in 1990, and Appellee filed for divorce on September 18, 2000.  Appellant and Appellee signed the agreement on November 15, 2000.  The agreement purported to divide all the property between the parties and settle all of the parties’ claims. 

Part of the agreement dealt with a house that the two owned during marriage.  The agreement required Appellee to refinance the home and to pay Appellant $100,000 from the loan.  If Appellee failed to refinance the home within seven days after signing the agreement, the agreement allowed Appellant to refinance the home and then transfer the property to Appellee.  When Appellee could not refinance the home, Appellant refinanced the home but failed to properly transfer title to Appellee. 

After Appellant failed to transfer the title of the home to Appellee, Appellee filed motions in the trial court asking in part for the court to order Appellant to properly deed the home to her and approve the agreement.  The motions also requested the trial court use a “mini-trial” to determine issues that the agreement did not cover.  The trial court signed the decree of divorce following the settlement agreement.  The court claimed that the costs for refinancing the home was the only issue not controlled by the agreement.  The trial court then awarded court costs and attorney’s fees to Appellee. 

FACTUAL AND LEGAL SUFFICIENCY

We will address Appellant’s fourth point first because it could prove decisive.  In Appellant’s fourth point, he contends that findings of facts numbers 18 and 19 and conclusions of law numbers 6, 7, 8, and 10 were erroneous as a matter of law or, in the alternative, against the great weight and preponderance of the evidence.  The trial court’s finding of fact number 18 stated that during the period between September 2000 to the date of the hearings Appellant incurred electric bills at the house owned by the parties.  Finding of Fact number 19 stated that during the same time period Appellant incurred $175 for the septic tank fee at the real property of the parties.  Conclusion of law number 6 states that it is just and right for Appellant to pay the electric bills incurred at the residence.  Conclusion of law number 7 states that it is just and right for Appellant to pay the $175 to repair the septic tank.  Conclusion of law number 8 states that it is just and right for Appellant to pay half of the closing costs incurred in refinancing the real property.  Conclusion of law number 10 states that it is just and right for Appellant to pay attorney’s fees and costs of $14,000, for the benefit of Appellee.
  

Appellant claims that the agreement between the two parties controls these issues.  He contends that paragraph 14 of the agreement specifically calls for Appellee to pay any expense that accrued on the property after the parties signed the agreement.  Appellant asserts that because the agreement controlled the issues of the electric bills, the septic tank repairs, and the closing costs the trial court could not find him liable for the expenses.
  
Appellant concludes by saying that if we find the agreement applies, then we must hold that he was the prevailing party at trial and that conclusion of law 10 is erroneous as a matter of law.

STANDARD OF REVIEW

Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.  
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).  Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts.  
Forbis v. Trinity Universal Ins. Co.
, 833 S.W.2d 316, 319 (Tex. App.—Fort Worth 1992, writ dism’d).  The trial court’s conclusions of law are reviewable de novo as a question of law, and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  
A & W Industries, Inc. v. Day
, 977 S.W.2d 738, 741(Tex. App.—Fort Worth 1998, no pet.); 
Nelkin v. Panzer
, 833 S.W.2d 267, 268 (Tex. App.—Houston [1st Dist.] 1992, writ dism’d w.o.j.).    

In determining a "no-evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez, 
937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cazarez,
 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).

A "no-evidence" point may only be sustained when the record discloses one of the following:  (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez,
 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)),
 cert. denied
, 526 U.S. 1040 (1999).  There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.  
Orozco v. Sander
, 824 S.W.2d 555, 556 (Tex. 1992).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination.  
Mar. Overseas Corp. v. Ellis,
 971 S.W.2d 402, 406-07 (Tex.)
, cert. denied, 
525 U.S. 1017 (1998).

DISCUSSION

The trial court’s findings of fact 18 and 19 hold Appellant liable for the costs of electric bills and septic tank repairs that accrued while he owned the property.  Appellant testified at trial that the bills did accrue while he  possessed the property, but Appellee should have paid the bills because she  owned the property under the agreement.  Appellant states that the bills directly resulted from tenants living on the property who were paying rent to Appellee.  Appellant contends that because the agreement made Appellee the true owner of the property and she received rent from the tenants who used the septic system and the electricity, she should be responsible for the bills. 

Appellant relies on paragraph 14 of the agreement which states that Appellee “shall assume and discharge the following liabilities and shall indemnify and hold [Appellant] harmless therefrom:  A. Any indebtedness secured by property awarded to [Appellee], specifically including any liability associated with the real estate set-aside to [Appellee], hereinbelow; B. Any indebtedness incurred by [Appellee] since separation of the parties.”
  
Where no ambiguity exists, it is the court’s duty to give words their plain meaning.  
Kelley-Coppedge, Inc. v. Highlands Ins. Co.
, 980 S.W.2d 462, 469 (Tex. 1998); 
Texas Farmers Ins. Co. v. Gerdes By and Through Griffin Chiropractic Clinic
, 880 S.W.2d 215, 218 (Tex. App.—Fort Worth 1994, writ denied).  If Appellee incurred the debts complained of here, after separation of the parties, the evidence at trial cannot support the judgment.  Further, if the bills originate from the naturally occurring debts of the property in question, the evidence is legally insufficient to support the judgment.

The evidence shows that the debts incurred resulted directly from actions taken by Appellant not Appellee.  Appellant entered into three leases on the property after the signing of the agreement but before he surrendered ownership to Appellee.  Appellant testified at trial that he entered into the leases to secure a $200,000 mortgage on the property in order to preform his duty under the agreement.  

Appellant entered the mortgage into evidence in the trial court and a careful reading of the mortgage shows no such requirement.  Appellant explained that the condition was oral and so it does not appear in the written mortgage.  Appellant testified that the oral condition required him to enter into the leases and as such the debt should belong to Appellee pursuant to paragraph 14.

Appellant has no legal support for his contention that an oral condition to the mortgage bound him to enter into the leases.  Oral conditions of loans over $50,000 are void, and Appellant was not bound by any agreement to lease the property.  
See
 T
EX
. B
US
. & C
OMM
. C
ODE
 A
NN
. § 26.02 (b) (Vernon 2002) (A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party’s authorized representative).  Section 26.02(d) of the Texas Business and Commerce Code states that “[a]n agreement subject to Subsection (b) of this section may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement.”  
Id.
  Because the loan did not require Appellant to lease the property, he acted outside of the agreement when he leased the property to three different tenants. 
 The trial court ruled that Appellant entered into the leases; therefore, he acquired the debts directly attributable to those leases. 

The evidence further shows that Appellant did not act on behalf of Appellee when he entered into the leases, because the agreement did not authorize Appellant to lease the property while he was attempting to obtain the mortgage and the mortgage that Appellant finally acquired did not require the leases.  Further, testimony at trial showed that Appellee never authorized Appellant to enter into the leases.  Appellant therefore could not have entered into the leases as Appellee’s agent.  
See Royal Mortgage Corp. v. Montague
, 41 S.W.3d 721, 732 (Tex. App.—Fort Worth 2001, no pet.) (holding that an agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal).  

At the time Appellant entered into the leases he possessed the home, and he was the only named person on the deed.  He personally entered into the contracts, and he did not act as Appellee’s agent at the time. This means that the debts that accrued as a result of the leases cannot be characterized as Appellee’s debts, but were Appellant’s debts which he was responsible for.
  
Paragraph 13 of the agreement requires Appellant to take responsibility for all debt that he incurred since separation of the parties. 
 
Further, the debts that occurred on the property would not have occurred but for the unauthorized leases.  Appellant testified at trial that the debts directly resulted from the tenants’ occupancy of the property.  This means that they did not naturally occur as expenses of owning the property and paragraph 14(B) did not bind Appellee to pay them.

We hold that the evidence at trial supplied
 a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact, and that the evidence
 
supporting the findings was not so weak or the evidence to the contrary so overwhelming that the answers should be set aside and a new trial ordered.
  Factually and legally sufficient evidence supported the trial court’s findings of fact.  We further hold that findings of fact 18 and 19 support conclusions of law 6 and 7.

REFINANCING CHARGES

We must now consider whether paragraph 14 prevented the trial court from imposing half of the refinancing charges on Appellant, as required by conclusion of law 8.
  
We begin by stating that if the agreement does not bind the trial court, the court could divide the debt between the parties as a community debt acquired by the parties during marriage.  
See Morris v. Morris
, 894 S.W.2d 859, 863 (Tex. App.—Fort Worth 1995, no writ) (It is well-established that debts contracted during the marriage are presumed to be community, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction.).

If the agreement does specifically assess this cost to one of the parties, then the trial court has no authority to alter the agreement.  
See Bishop v. Bishop
, 74 S.W.3d 877, 879-80 (Tex. App.—San Antonio 2002, no pet.) (An order that amends, modifies, alters, or changes the division of property made or approved in a final decree of divorce is beyond the trial court’s power and is unenforceable.).  However, if the trial court found the agreement ambiguous or not specific enough to enforce as written, the court could enter a clarifying order to enforce compliance with the way the parties originally divided the property.  
Id.

Applying the plain meaning of the paragraph we cannot say that the parties intended to hold Appellee responsible for the refinancing costs.  The paragraph states that Appellee must pay debts secured by the property or any liability directly attributable to the property.  Using this paragraph the parties intended to prevent Appellant from becoming liable for the repayment of the mortgage and possible tort liability arising from ownership of the property.  While the agreement required a new mortgage to compensate Appellant, it did not specify who bore the costs of refinancing the property.  If the parties intended to include this designation in the agreement, they only needed one specific sentence to show their intent to hold Appellee liable for the closing costs.  Instead the agreement is silent and as such the agreement is not specific as to who should bear the costs.  Because paragraph 14 is not specific enough to impose the costs of refinancing the loan on Appellee, the trial court could divide the costs among the parties as a community debt in a manner that the trial court considered just and right. 
 Id. 
at 879.  
We hold that evidence at trial sufficiently supported the trial court’s conclusion of law 8.

Appellant based his challenge to the trial court’s conclusion of law 10 on the theory that if we found findings of fact 18 and 19 and conclusions of law 6, 7, and 8 legally or factually insufficient, then conclusion of law 10 would be insufficient as well.  Because we find the findings of fact and conclusions of law complained of sufficient, we find that the trial court committed no error in conclusion of law 10.  We overrule Appellant’s fourth point on appeal.

ATTORNEY’S FEES

In Appellant’s points one, two, and five, he claims that conclusion of law number 10 was incorrect and erroneous as a matter of law.  In Appellant’s point three, he claims that the trial court erred in overruling his motion for new trial/motion to modify or reform the judgment because the decree of divorce did not conform to the trial court’s oral rendition of judgment approving the entirety of the agreement.  Because the four points all deal with whether the trial court correctly awarded Appellee attorney’s fees, we will address the points together.

STANDARD OF REVIEW

We review a trial court’s conclusions of law de novo as legal questions.  
Boyd v. Boyd
, 67 S.W.3d 398, 404 (Tex. App.—Fort Worth 2002, no pet.); 
Hitzelberger v. Samedan Oil Corp.
, 948 S.W.2d 497, 503 (Tex. App.—Waco 1997, pet. denied).  Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  
Boyd
, 67 S.W.3d at 404.  Incorrect conclusions do not require reversal if the controlling findings of fact will support a correct legal theory.  
Hitzelberger
, 948 S.W.2d at 503.

DISCUSSION

Under Appellant’s first point, he claims that the trial court incorrectly granted Appellee her attorney’s fees because the parties had agreed to a consent judgment approving the mediation agreement.  In Appellant’s second point he claims that, because the trial court approved the agreement in its entirety, the court did not have the power to alter the agreement by awarding attorney’s fees.  Under Appellant’s third point, he claims that when the trial court orally approved the agreement in its entirety the court could not grant attorney’s fees under the written judgment because the two are inconsistent.  Appellant based points one, two, and three on his belief that the agreement does not allow for attorney’s fees.  

Appellant points to paragraph 17 in support of this contention.  Under paragraph 17, the agreement obligates the parties to pay their own attorney’s fees.  Paragraph 17 of the agreement states that “[t]o effect an equitable division of the estate of the parties, each party shall pay his and her own attorney’s fees and costs in this cause.”  Appellant asserts that this paragraph controls and binds the parties to pay for their own attorney’s fees.  Appellant further contends that when the trial court ruled to enforce the agreement as written, it could not later ignore this provision of the agreement by granting the attorney’s fees.  

Appellee responds that the agreement provides for the award of attorney’s fees in the present situation.  Appellee points to paragraph 20 of the agreement which states that the parties agree to attempt to resolve any disputes with regard to the interpretation and/or performance of the agreement through the use of mediation, but if one of the parties brings litigation to enforce or construe the agreement, the agreement entitles the prevailing party to recover attorney’s fees as well as court costs and expenses, including the cost of mediation.  Appellee claims that this paragraph authorizes the trial court’s actions.  We agree.  

Because both Appellant and Appellee contend that the agreement binds the parties as written, we must only determine whether paragraph 17 or paragraph 20 controls in the present situation in order to answer Appellant’s points one, two, and three.  When construing a mediated settlement agreement incident to divorce, a court must look to the intentions of the parties as they are manifested in the written instrument.  
Bishop
, 74 S.W.3d at 879-80. 

Paragraph 17 refers to attorney’s fees that already accrued at the time of the agreement.  The paragraph states that the parties would bear their own attorney’s fees up to the signing of the agreement.  The paragraph shows this intent by using the words “to effect an equitable division of the estate of the parties.”  These words show the parties’ intent to distribute the attorney’s fees, accrued at the time of the first mediation, as part of the general distribution of the marital estate.  The paragraph refers to attorney’s fees accrued up and through the mediation process, and has no effect on future litigation.

Paragraph 20 has the words “if litigation is brought to construe or enforce this Agreement.”  The parties conditioned this paragraph on a future event occurring or not occurring.  The clause states that if one party finds it necessary in order to properly enforce the agreement to sue the other party, the prevailing party in the suit will have their attorney’s fees paid for by the loser of the suit.  The future tense of the paragraph shows that the parties included the clause in the agreement in order to encourage performance under the agreement and to cover the cost of future litigation for the prevailing party.  

Because the parties focused paragraph 20 at any possible future litigation  necessary to enforce the agreement, it expresses the clear intent of the parties to authorize the award of attorney’s fees to the prevailing party in the present case.  We hold that neither the parties’ agreement itself nor the approval of the trial court of the agreement prevented the trial court from awarding attorney’s fees in the present case.  Because the agreement specifically authorizes the awarding of attorney’s fees to the prevailing party, the trial court’s oral judgment approving the agreement in its entirety and its written judgment granting attorney’s fees do not conflict.  We overrule Appellant’s points one, two, and three.  

In order to rule on Appellant’s fifth point, we must determine which party prevailed at trial.  In Appellant’s fifth point he claims that the trial court erred in awarding Appellee attorney’s fees because Appellant prevailed on more issues at the trial court than Appellee did.  Appellant contends that paragraph 20 only authorizes the trial court to award attorney’s fees to the prevailing party.  Appellee responds claiming that she prevailed at trial and so the court did not err by awarding her attorney’s fees.

Appellee asked the court to rule on ten different issues at trial.  Specifically she asked the court to:  1) divide mortgage payments that had accrued since the beginning of the divorce; 2) order Appellant to pay utility bills that accrued during Appellant’s occupancy of the property; 3) require Appellant to make repairs on the septic tank located on the property; 4) require Appellant to vacate the property; 5) require Appellant to return property taken from a storage shed; 6) order Appellant to surrender the rights to trade names that Appellee uses in her business; 7) order the two parties to split closing costs on the new mortgage on the property; 8) require Appellant to surrender property that Appellee claimed as her separate property; 9) set dates for the final division of property; and 10) determine ownership of property not contemplated in the agreement.  Appellant made his own motion requesting the court to:  1) force Appellee to return property unlawfully removed from the parties’ home; and 2) pay the agreed upon child support.  

The definition of prevailing party is one “who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention.”  Black’s Law Dictionary 1069 (5
th
 ed. 1979); 
Criton Corp. v. Highlands Ins. Co.
, 809 S.W.2d 355, 357 (Tex. App.—Houston [14th Dist.] 1991, writ denied).  

In Appellee’s first issue in the trial court, she argued that Appellant should pay mortgage payments acquired after the parties finalized the agreement but before Appellant transferred possession of the property to Appellee.  Prior to the hearing on the contested issues, Appellant paid Appellee $5,000 for mortgage payments.  The trial court ruled this issue moot.  

In Appellee’s second issue in the trial court she argued that the trial court should hold Appellant responsible for utility payments on the home while he possessed the residence.  The trial court found that Appellant breached the agreement by his continued occupation of the home, and through this breach he accrued these debts.  The trial court then ruled in conclusion of law number 6 that it was just and right for Appellant to pay these bills.  Appellee prevailed on this issue.

In Appellee’s third issue in the trial court she requested that the court require Appellant to pay for repairs on the septic tank system located on the property.  The trial court found again that the debt accrued due to Appellant’s unlawful possession of the property.  The trial court then ruled that it was just and right for Appellant to pay for the repairs.  Appellee prevailed on this issue.

Appellee’s fourth issue regarded Appellant’s failure to vacate the property after he acquired the mortgage.  Appellee argued that the agreement required Appellant to transfer the property to Appellee once he completed the refinancing.  The trial court ruled that Appellant still possessed the property as of the date of the hearings, and Appellant had failed to transfer fee simple title of the property to Appellee as required in the agreement.  The trial court then ruled that Appellant must vacate the property by May 31, 2001.  Appellee prevailed on this issue.

The trial court did not rule on Appellee’s fifth issue which asked the trial court to order Appellant to return property seized from a storage shed.  Testimony at trial showed that a third party likely was responsible for the missing property.  The trial court did state that if Appellant had any of the stored property he must surrender it to Appellee.  

Appellee argued in her sixth issue in the trial court that Appellant  wrongfully acquired Appellee’s trade names after the parties filed for divorce.  Appellant conceded that Appellee was entitled to her professional names which he had acquired ownership of.  The trial court found in findings of fact number 21 that Appellant had not cancelled his registration of the trade names, and that the names rightfully belonged to Appellee.  Appellee prevailed on this issue.

On Appellee’s issue seven, she asked the trial court to hold Appellant jointly responsible for the closing costs accrued in refinancing the house.  Appellee argued that the agreement did not control and that it was fair for the parties to split the costs.  In conclusion of law number 8, the trial court held  Appellant responsible for half of the costs of refinancing the home.  Appellee prevailed on this issue.

In Appellee’s eighth issue at trial, she claims that the agreement was incomplete and that the court should award Appellee her personal property that was overlooked in the agreement.  The trial court ruled that the agreement controlled and that the property belonged to Appellant.  Appellant prevailed on this issue.

Appellee’s ninth issue at trial requested that the trial court set a date for the final exchange of all property.  Both Appellee and Appellant agreed that the court should set a date.  The trial court granted this request and ordered the parties to completely distribute the property by May 31, 2001. 
 Appellee prevailed on this issue.

Appellee’s tenth issue involved items that Appellee claimed the agreement did not cover.  The trial court again stated that the settlement agreement controlled.  The trial court then ruled that the agreement specifically gave Appellant the property.  Appellant prevailed on this issue.

In Appellant’s first issue that he brought to the court’s attention, he claimed that Appellee had failed to pay child support payments required by the agreement.  The trial court dismissed the issue over child support payments on procedural grounds.  Appellant’s second issue in front of the trial court dealt with property allegedly taken by Appellee, the trial court ruled that if Appellee did have the property in her possession she must return it to Appellant.  Appellant prevailed on his second issue.  

Out of the twelve issues that the trial court ruled on, Appellee received favorable rulings on six of the issues while Appellant received favorable rulings on three of the issues.  Appellee’s primary point focused at Appellant’s failure to transfer fee simple title of the home.  Appellee clearly prevailed on this issue.  The trial court ruled that Appellant had failed to transfer title and in so doing he had breached the agreement.  Because Appellee prevailed on her main issue, even though not necessarily to the extent of her original contention, she was the prevailing party.  
See
 
Criton Corp.
, 809 S.W.2d at 357.  Comparing the issues put forward by both parties with the final judgment and the findings of facts and conclusions of law we hold that Appellee was the prevailing party at trial.  We overrule Appellant’s points one, two, three and five.

CONSTRUCTIVE CONTEMPT 

In Appellant’s sixth point on appeal, he claims that the trial court’s conclusions of law number 8 and 10 were incorrect and erroneous as a matter of law because the court below was barred from holding Appellant in constructive contempt without adequate notice and a hearing.  Appellant claims that the trial court granted Appellee her attorney’s fees and forced Appellant to pay half of the closing costs on the new mortgage because Appellant failed to attend a court ordered mediation.  Appellant claims that the trial court improperly assessed the fees and costs of the mortgage because Texas law entitled him to a hearing before the court could find him in contempt.

STANDARD OF REVIEW

We review a trial court’s conclusions of law de novo as a question of law, and will uphold the judgment on appeal if it can be sustained on any legal theory supported by the evidence.  
A & W
, 977 S.W.2d at 741; 
Nelkin
, 833 S.W.2d at 268.  An incorrect conclusion of law does not warrant reversal if the judgment is otherwise correct.  
Able v. Able
, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref’d n.r.e.).

DISCUSSION

Appellant contends that, when the trial court awarded Appellee attorney’s fees and required Appellant to pay half of the closing costs on the property, the trial court was in fact imposing a fine for constructive contempt for failing to attend a court ordered mediation.  Appellant states that the trial court could not do this without giving him notice and a hearing to explain his actions.
  If the trial court did find Appellant in constructive contempt without notice and a hearing, the trial court violated Appellant’s due process rights.  
See In re Acceptance Ins. Co.
, 33 S.W.3d 443, 448-49 (Tex. App.—Fort Worth 2000, no pet.) (Due process requires that full and unambiguous notice of an accusation of contempt be served on the alleged contemnor). 

The trial court in its oral rendition of judgment declared that the agreement covered all issues except the closing costs.  The court stated that the agreement required the parties to go to mediation to resolve any dispute under the agreement prior to obtaining a judgment.  The trial court then stated that Appellant failed to go to the court ordered mediation in the case.  The trial court noted that the agreement required attorney’s fees to go to the prevailing party at trial and then awarded Appellee attorney’s fees and one-half of the closing costs on the property.  Appellant claims that the oral rendition of judgment shows the trial court’s intent to make the closing costs and attorney’s fees fines for contempt.

We hold that Appellant has no proof that the trial court imposed a fine on Appellant for contempt.  The trial court never entered a contempt judgment against Appellant.  It never ruled that Appellant violated a court order that would be worthy of contempt proceedings.  In fact, the trial court never used the word contempt in its oral rendition of judgment.  

The trial court based its rulings on the facts of the case.  It ruled that the agreement provided for the attorney’s fee award because paragraph 20  required the prevailing party to be compensated in such a manner.  The trial court held that the agreement controlled all issues except the issue of closing costs and then ruled that the parties should split the costs.  Further the trial court ordered Appellant to pay both the attorney’s fees and half of the closing costs to Appellee and not to the court.  Because contempt fines are not payable to private litigants, this shows that the trial court was not imposing a contempt fine in the present case.  
See Cadle Co. v. Lobingier
, 50 S.W.3d 662, 669 (Tex. App.—Fort Worth 2001, pet. denied).  

We conclude that the trial court did not impose attorney’s fees and closing costs on Appellant as a constructive contempt for failing to go to the court ordered mediation.  Instead, the trial court imposed both the attorney’s fees and closing costs based on the evidence and the pleadings.  We overrule Appellant’s sixth point on appeal.

THE ATTEMPTED CONVEYANCES

In Appellant’s seventh point, he claims that the trial court’s findings of fact number 23 and conclusions of law numbers 11 and 12 were incorrect and erroneous as a matter of law because Appellant’s corrected special warranty deed did convey fee simple title to Appellee.  Appellant claims that the corrected special warranty deed he attempted to convey to Appellee on May 25, 2001, effectively conveyed fee simple title to Appellee.  Finding of fact 20 states that Appellant continued to reside at the real property of the parties as of the dates of the hearings.  Conclusion of law 11 states that Appellant did not convey fee simple title to the Denton County, Texas real property to Appellee.  Conclusion of law 12 states that it is just and right for Appellant to convey fee simple title to the Denton County, Texas real property to Appellee.

STANDARD OF REVIEW

When the party without the burden of proof on a fact issue complains of an adverse fact finding, that party's issue or point challenging the legal sufficiency of the evidence should be that there was "no evidence" to support the finding.  
Croucher v. Croucher
, 660 S.W.2d 55, 58 (Tex. 1983); 
Marshall v. Superior Heat Treating Co.
, 826 S.W.2d 197, 200 (Tex. App.—Fort Worth 1992, no writ).

We have previously set out the applicable standard of review for a legal sufficiency challenge.

DISCUSSION

The trial court found in finding of fact 20 that Appellant had continued to reside at the property in question up to the date of the hearings.  The last hearing in the case occurred on May 25, 2001.  Appellant challenges this finding of fact claiming that the special warranty deed of May 25, 2001 effectively conveyed title of the property to Appellee.  

The fact that Appellant may or may not have transferred title of the property on May 25, 2001 has no bearing on the trial court’s finding of fact.  Appellant testified at the hearing on May 25, 2001 that he currently resided at the property in question.  Further, Appellant requested the court to allow him to remain on the property until June 15, 2001.  Through e-mails that Appellant had sent Appellee prior to the hearing, the evidence showed that Appellant refused to allow Appellee access to the property as of May 18, 2001.  The evidence at trial showed that Appellant possessed the property as of May 25, 2001, and he intended to remain on the property excluding Appellee access past the date of the hearing.  We hold that more than a mere scintilla of evidence existed to support finding of fact 20.

In order to determine if conclusions of law 11 and 12 are valid, we must interpret the special warranty deed offered by Appellant to determine if it transferred fee simple title.  The agreement required Appellant to transfer fee simple title to Appellee once he refinanced the home.  The agreement gave ownership of the property to Appellee and $100,000 to Appellant in compensation.  Appellee transferred title of the home over to Appellant in order for him to obtain a mortgage on the property.  On March 14, 2001 Appellant obtained refinancing on the home.  He attempted to deed the property back to Appellee but the deed was defective.  Appellant testified that his next attempt to deed the property to Appellee occurred on May 25, 2001, over two months later. 

The deed on May 25, 2001 included an extra paragraph making it “subject to all easements, restrictions, conditions, covenants, leases and other instruments of record.”  Appellant testified at the time of the hearing that two written leases and one oral lease existed on the property.  One of the written leases on the property granted possession of the house and the barn to a third party for a two-year period.  This lease allowed Appellant to sublease the property back to himself rent-free for an undetermined amount of time.  This meant that under the May 25 deed, Appellant could have continued living on the property rent-free even after he transferred the property back to Appellee. 

Appellee objected to this deed stating that it failed to transfer fee simple ownership to her.  As evidence of her contention she pointed to the added paragraph and the three leases.  The trial court concluded that the leases on the property, which Appellant entered into with no authorization by Appellee added with a clause in the deed which subjected the conveyance to the leases, prevented the deed from transferring fee simple title.  We agree with the trial court’s conclusion.

Fee simple title is an estate over which the owner has unlimited power of disposition in perpetuity without condition or limitation.  
Walker v. B.W. Foss
, 930 S.W.2d 701, 706 (Tex. App.—San Antonio 1996, no writ).  If Appellant did convey fee simple title to Appellee, she should be able to use and enjoy the property in an unrestricted manner.  “In fee simple, the ownership of property is defined not merely as the right to own and possess the land, but to use, enjoy, and dispose of it as one sees fit.”  
Barber v. Texas Dept. of Transp.
, 49 S.W.3d 12, 18 (Tex. App.—Austin 2001, no pet.); 
Duke v. Duke
, 605 S.W.2d 408, 412 (Tex. App.—El Paso 1980, writ dism’d); 
see also
 
Spann v. City of Dallas
, 111 Tex. 350, 235 S.W. 513, 514 (1921).  If the deed conveyed fee simple title, Appellee should have been given the right to use and possess the property as of the date of the conveyance.  

Appellant’s deed begins as a fee simple conveyance but he includes a restriction in the deed.  This restriction subjects the deed to three leases.  Texas law has stated that “subject to” language is a term of qualification and limits the estate granted.  
N.P., Inc./Turboff v. Turboff
, 54 S.W.3d 886, 891 (Tex. App.—El Paso 2001, no pet.); 
Natural Gas Pipeline Co. of America v. Law
, 65 S.W.3d 121, 126 (Tex. App.—Amarillo 2001, no pet.); 
Walker
, 930 S.W.2d at 706-07.  Subjecting a fee simple to leases removes some of the rights that a owner in property has and prevents the owner from possessing part or all of the property.  
See Mobil Pipe Line Co. v. Smith
, 860 S.W.2d 157, 159 (Tex. App.—El Paso 1993, writ dism. w.o.j.) (holding that when property is leased, the right to possession is divested from the owner during the terms of the lease and the tenant may exclude owner from the property). 

When we combine the restriction in the deed with the testimony at trial showing that three leases on the property existed and one of those leases covered the main house and barn for two years, we see that Appellee would be restricted from using or even entering the land for nearly two years.  Meanwhile, because of the sublease of the property, Appellant could continue to live on Appellee’s property rent-free for the entire time.  If fee simple ownership of land includes the right to possess and use the land as the owner sees fit, then the deed in this case, when combined with Appellant’s execution of the leases, could not transfer fee simple title to Appellee.  We hold that conclusions of law 11 and 12 were sustainable on a legal theory which the evidence supported.  We overrule Appellant’s seventh point on appeal.

CONCLUSION 

Having overruled Appellant’s points on appeal, we affirm the judgment of the trial court.

SAM J. DAY

JUSTICE

PANEL B: DAY, DAUPHINOT, and HOLMAN, JJ.

[DELIVERED: FEBRUARY 20, 2003]