COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-234-CV

 

 

ESTATE OF NOMA BISHOP IRVIN, DECEASED                                          

 

                                                    

                                                                                                        

 

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In five issues, appellant David
Irvin, executor of the estate of W. Ray Irvin, Jr.,[2]
appeals the trial court=s denial of
his additional claims, brought after our partial reversal and remand in Irvin
v. Parker, 139 S.W.3d 703 (Tex. App.CFort Worth 2004, no pet.).  We
affirm.








BACKGROUND

Noma died in May 1998,
leaving Ray as her surviving spouse.  Irvin, 139 S.W.3d at 705.  In December 1998, Loretta Parker (AAppellee@), Noma=s sister and estate administrator, filed a petition to recover
property belonging to Noma=s estate.  Id.  The case was tried to a jury in February
2002.  Id. at 706.

The jury made four
findings.  It found the amount of reimbursement
owed by the estate to Appellant for property taxes on Noma=s separate property residence ($0) and for funeral expenses and grave
monument ($1,277.20), and the amount of offset, i.e., the fair rental value attributable
to Appellant=s occupancy,
against Appellant=s
reimbursement claim for the property taxes ($0).  It also found that an annuity was Noma=s separate property and that she did not knowingly consent to
Appellant=s being the
annuity=s owner on the date of its purchase. 
Appellant appealed to this court on the annuity=s proper characterization.  Id.  We reversed the trial court=s judgment on that characterization and remanded for distribution of
the annuity and its proceeds in June 2004. 
Id. at 708, 712.  We
affirmed the trial court=s judgment
in all other respects and ordered Appellee to pay all costs of the appeal.  Id. at 712. 








On December 1, 2004,
Appellant filed a AMemorandum
of Issues Not Resolved,@ seeking
funeral expenses paid by Appellant, reimbursement for AC&C additional appella[te] costs@ and attorney=s fees, and
reimbursement credit Afor being
driven out of the [homestead].@  Appellant asserted that A[n]one of these issues were presented to the jury, nor could they have
been.@  The cumulative value in
Appellant=s sworn list
of claims, filed December 3, 2004, which included not only the claims in his
memorandum but also claims for his attorney=s fees from the jury trial and appeal, was $219,536.08. Appellee
responded with a AMemorandum
of Personal Representative,@ on December 29, 2004, in which she rejected Appellant=s reimbursement claims for: Ahomestead claim for life estate@; prospective rent; funeral expenses; attorney=s fees; court reporter costs of $1,122.90; and AC&C additional appella[te] costs@ of $389.98.[3]  Appellee allowed the court reporter costs of
$5,520.00, county clerk costs of $1,778.00, and the tombstone cost of
$1,227.20.








In May 2005, Appellee filed
an AAccount For Final Settlement@ in the probate court in which she allowed Appellant=s court reporter costs of $5,520.00, his county clerk costs of
$1,778.00, and the tombstone cost of $1,227.20, but rejected his other eight
claims now at issue here.  Appellant
filed a motion in June 2005,[4]
requesting an evidentiary hearing on the denied claims.  In response to Appellant=s motion, Appellee argued that these claims were barred by res
judicata and by section 313 of the probate code because Appellant failed to
file suit within ninety days after Appellee rejected the claims.  See Tex.
Prob. Code Ann. ' 313 (Vernon
2003).








The trial court heard these issues
in December 2005, as well as Appellant=s motions for correction of inventory and appraisal, to deny approval
of final accounting, and for a hearing on unresolved issues.  At the hearing, the following items were
submitted by Appellant and admitted into evidence: volume eight of the trial
record, a July 30, 1998 letter from Appellee=s attorney to Appellant requesting his cooperation in settling the
estate, the bill of costs from this court, Appellant=s AC&C
additional appella[te] costs@ (i.e., postage, photocopies, and library usage), the receipt for Noma=s funeral expenses, and Appellant=s attorney=s fees.  The trial court awarded Appellant one-half of
the proceeds of a certificate of deposit and one-half of the annuity proceeds
addressed in our previous opinion; it denied the remainder of his motions.

At Appellant=s request, the trial court entered findings of fact and conclusions of
law.  It made the following fact
findings:

(1)
[Appellant] failed to request an issue on his Ahomestead
claim for life estate to Southwest Parkway in the amount of $78,000.00" in
the jury trial in this cause (which was appealed to the Court of Appeals under
Cause No. 2-02-258-CV).

 

(2)
[Appellant] failed to request an issue on his Aprospective
claim $1,000.00 per month rental value in the amount of $85,000.00" in the
jury trial of this cause.

 

(3)
[Appellant] requested an issue as to Athe community estate of
[Appellant] used to pay for funeral expenses of Noma Bishop Irvin and the
purchase of a monument for her grave site@ and the jury answered A$1,227.20.@

 

(4)
[Appellant] failed to request an issue on attorney=s
fees in the jury trial of this cause.

 








In findings (5) through (12),
the trial court also found that on December 3, 2004 Appellant filed eight
separate claims against the estate with Appellee after the jury trial and
appeal; that each of the claims was rejected by Appellee on December 29, 2004;
and that Appellant did not bring suit within ninety days of the date of the
rejection of the following claims: (5) Aa homestead claim for life estate in Southwest Parkway residence in
the amount of $78,000.00,@ (6) Aa homestead claim for prospective claim in the Southwest Parkway
residence in the amount of $85,000.00,@ (7) AC & C additional
appella[te] costs of $398.98,@[5] (8) funeral expenses of $7,056.00, (9) attorney=s fees of $21,427.00, (10) attorney=s fees of $5,000.00, (11) attorney=s fees of $5,000.00, and (12) court reporter costs of $1,122.90.  The trial court stated in its conclusions of
law that each of Appellant=s eight claims was barred by res judicata and section 313 of the
probate code.

BARRED CLAIMS

Appellant=s five overlapping issues amount to the general argument that the
eight denied claims were not barred as a matter of law by section 313 of the
probate code or res judicata, and that some of the trial court=s fact findings supporting these conclusions were contrary to the
evidence or had insufficient evidence to support them.

Standard Of Review








Findings of fact entered in a
case tried to the court have the same force and dignity as a jury=s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  Findings of fact, although not required, can
properly be considered by the appellate court in an appeal from any judgment
based in any part on an evidentiary hearing. 
See IKB Indus. (Nigeria) v. Pro‑Line Corp., 938 S.W.2d 440,
443 (Tex. 1997); Int=l Union v. General Motors Corp., 104 S.W.3d
126, 128‑29 (Tex. App.CFort Worth 2003, no pet.).  The
trial court=s findings
of fact are reviewable for legal and factual sufficiency of the evidence to
support them by the same standards that are applied in reviewing evidence
supporting a jury=s
answer.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).








A legal sufficiency challenge
may only be sustained when:  (1) the
record discloses a complete absence of evidence of a vital fact; (2) the court
is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 Tex.
L. Rev. 361, 362‑63 (1960). 
In determining whether there is legally sufficient evidence to support
the finding under review, we must consider evidence favorable to the finding if
a reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  Anything more than a scintilla of evidence is
legally sufficient to support the finding. 
Cont=l Coffee
Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins. Co., 77 S.W.3d
253, 262 (Tex. 2002).

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406‑07 (Tex.), cert. denied, 525 U.S. 1017 (1998).








Conclusions of law may not be
challenged for factual sufficiency, but they may be reviewed to determine their
correctness based upon the facts. Citizens Nat=l Bank v. City of Rhome, 201 S.W.3d
254, 256 (Tex. App.CFort Worth 2006,
no pet.); Dominey v. Unknown Heirs and Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005, no pet.).  The
trial court=s
conclusions of law are reviewable de novo as questions of law, and will be
upheld on appeal if the judgment can be sustained on any legal theory supported
by the evidence.  Hawkins v. Ehler,
100 S.W.3d 534, 539 (Tex. App.CFort Worth 2003, no pet.).

Homestead Fact Finding

Appellant complains in his
second issue about the sufficiency of the evidence to support the trial court=s fact finding on his request for a homestead issue at the jury
trial.  He argues that his request for a
homestead issue was denied at the jury trial, referring to the requested issue
as A[a]n issue to this effect,@ and that therefore, the trial court=s first finding of fact was contrary to the evidence in the jury
trial.[6]  The trial court found that A[Appellant] failed to request an issue on his >homestead claim for life estate to Southwest Parkway in the amount of
$78,000.00= in the jury
trial of this cause.@  The issue that Appellant did request at trial
proposed that the jury

 








[f]ind from clear and
convincing evidence the amount of the reimbursement claim or offset, if any,
proved in favor of [Appellant], and state your answer, if any, in dollars: The
fair market rental value of the residence on Southwest Parkway following its
surrender by [Appellant] to the Estate.








A plain reading shows that
the requested issue is similar to, but not the same as, what Appellant now
argues.  Specifically, the proposed jury
issue requested that the jury name an amount for the fair rental value of the
residence after Appellant decamped; it does not request the specific amount of
$78,000.00, nor does it mention Ahomestead claim@ or Alife estate.@[7]  Because of these differences,
we conclude that there was legally sufficient evidence upon which the trial
court could base its finding that Appellant failed to request an issue on his Ahomestead claim for life estate . . . in the amount of
$78,000.00" in the jury trial.  See
City of Keller, 168 S.W.3d at 827. 
Having reviewed all of the evidence presented at the hearing, we also
conclude that it was factually sufficient to support the fact finding because
the evidence supporting it is not so weak that the answer should be set aside
and a new hearing ordered.  See Garza,
395 S.W.2d at 823.  We overrule Appellant=s second issue.

Appellant's Claims








Appellant argues in the first
point of his first issue that the nature of a probate case is that it can
involve multiple claims brought at various times, so  his claims should not have been denied.  In the second point of his first issue, tied
to issues three and five, he contends that he complied with section 313 of the
probate code.  And in the fourth point of
his first issue, tied to issue four, he complains that his claims were not
barred by res judicata.

Multiple Claims

Appellant asserts that a
probate case can involve multiple rulings of the court or separate trials that
present final appealable orders.[8]  He cites Roach v. Rowley, 135 S.W.3d
845 (Tex. App.CHouston [1st
Dist.] 2004, no pet.), in which the court held that several separate applications
for fees and expenses by the temporary administrator were each final and
appealable orders.  Id. at 848.








Roach=s pertinent issue was whether the devisee had waived his objections to
the nine fee orders filed, approved, and paid between November 2001 and October
2002.  Roach, 135 S.W.3d at
846-48.  The devisee=s only objections pertained to the fees, and he did not file any
objections to them until December 2002, after the final accounting was
filed.  Id. at 846.  The court held that he had waived those
objections because each of those orders was final and appealable.  Id. at 846, 848.  The court=s reasoning was based on the orders= contents, which involved a final adjudication of substantial rights
and the absence of any interlocutory language, and precedent that stated that a
probate order awarding attorney=s fees was final for purposes of appeal because, as estate
administration was an ongoing process, it would be unfair to defer appellate
review of the order until the estate was closed.  Id. at 848.    Appellant appears to be arguing that because the fee claims in Roach
were filed at different times during the administration of the estate and were
final and appealable after each payment, then his additional claims, brought
after the jury trial and his appeal to this court, are somehow not precluded.[9]  If this is the case, we disagree.[10]








The nature and timing of the
claims in Roach and those brought by Appellant are fundamentally
different.  The Roach orders
pertained to payment of accounts incurred through estate administration;
the devisee appealed after the trial court signed the order that both denied
his objection and approved the amended final accounting, closing the
estate.  Id. at 846.  There had been no trial on any matter
involving that estate and no objection except with regard to payment of fees
involved in administering it.  Id.  Here, in contrast, Appellant seeks
reimbursement for expenses incurred before the jury trial, such as funeral
expenses, as well as expenses incurred during his appeal and claims for
prospective relief, and none of these are directly tied to the administration
of Noma=s estate, which Appellee conducted. 
The Roach court specifically cited to precedent that held that,
with regard to payment of attorney=s fees incurred in estate administration, a probate order awarding
those fees was final for purposes of appeal. 
Id. at 848; see Wittner v. Scanlan, 959 S.W.2d 640, 642
(Tex. App.CHouston [1st
Dist.] 1995, writ denied).  No attorney=s fees incurred in the administration of Noma=s estate are at issue here. 
Because we conclude that Roach is inapposite, and Appellant cites
us to no other case law pertaining to multiple claims brought at different
times, we overrule his first point in his first issue.

Section 313 Of The Probate Code








In his fifth issue and his
second point under his first issue, Appellant complains that the trial court
erred by concluding that his eight claims were barred by section 313 of the
probate code and contends that he complied with section 313.  See Tex.
Prob. Code Ann. ' 313.  In his third issue, he asserts that there was
insufficient evidence to support the trial court=s fact findings that he did not bring a suit within ninety days of the
rejection of his claims by Appellee.

Section 313 provides that
when a claim has been rejected by the estate=s personal representative, Athe claimant shall institute suit thereon . . . within ninety days
after such rejection, or the claim shall be barred.@  Id.; see Russell v.
Dobbs, 163 Tex. 282, 354 S.W.2d 373, 376 (Tex. 1962).  This statute=s purpose is to bring about an early disposition of claims against
estates.  See Russell, 354 S.W.2d
at 376.  The presentation of a claim to
the representative is the first step in the procedure established for obtaining
a judgment which can be enforced in the probate proceedings, and as a general
rule the creditor must comply with all statutory requirements.  Id.













It is not disputed that
Appellant presented his claims to Appellee, or that she rejected them.  Appellant filed his AMemorandum of Issues Not Resolved@ and list of authenticated claims in early December 2004, and Appellee
rejected them on December 29, 2004 in her AMemorandum of Personal Representative.@ Whether Appellant complied with section 313 depends on the
construction of the phrase Ainstitute suit@ as it
pertains to his memorandum and list of claims, which he argues met section 313=s requirements.  The probate
code does not define the phrase Ainstitute suit.@  Appellant cites us to In re Estate of
Ayala, 19 S.W.3d 477, 479 (Tex. App.CCorpus Christi 2000, pet. denied), to support his argument for a loose
interpretation of the timing required under section 313.  In Ayala, creditor IBC filed a claim
and a Amotion to require sale of property@ with the court in December 1997, which the estate=s personal representative never expressly allowed or rejected.  Id. at 478.  Generally, a claimant is charged with the
knowledge that a claim will be deemed rejected by operation of law if no action
is taken by the representative within thirty days.  See Russell, 354 S.W.2d at 376
(stating that the statutes contemplate that a creditor will keep himself
informed as to the status of his claim and take the steps required by law to
reduce the same to judgment).  But in Ayala,
between January and April 1998, the trial court erroneously allowed the claim
and then set aside its order granting it; IBC filed an amended motion for sale
in June, which the trial court denied and dismissed, and which was subsequently
appealed.  19 S.W.3d at 478.  Because IBC=s first motion to require sale, filed on the same day that it filed
its claim, set out the claim, the facts supporting it, and requested relief,
the Ayala court concluded that the substance of IBC=s motion, construed liberally, could constitute a Asuit@ under
section 313.  Id. at 479.  It also held that section 313 had no
provision barring a claim filed prematurely and, analogizing to premature
motions for new trial and notices of appeal, which are considered filed on the
date of, but subsequent to, the signing of the judgment, it rejected the
argument that the claim was barred for premature filing.  Id. at 479‑80.  However, the Ayala court did not
address what effect rejection would have had on the claim, since the personal
representative never expressly rejected or accepted it, and the Ayala court
only reversed and remanded the order that had denied and dismissed IBC=s claim.  Id. at
480.  Appellant=s December 2004 memorandum stated that Athe following matters are before the court@:

(1)
The funeral expenses, which were paid by [Appellant], is a statutory priority
claim and the estate is required by statute to pay such expenses out of . . .
Noma Irvin=s
part of the community property.

 

(2)
The estate agreed that [Appellant] is entitled to be reimbursed appella[te]
costs in the amount of $7243.00, but not expenses paid by [Appellant] in the
amount of $5,398.00, which include postage, filing fees, and appella[te]
attorney[>s]
fees.  This is an issue which the court
should consider and then make a ruling.

 

(3) [Appellant] is entitled a
reimbursement credit for being driven out of the house.  Jim Chandler [Appellee=s witness at trial] testified that at the time of Noma=s death, the rental value for Southwest Parkway was a $1,000.00 per month,
and [Appellant] has now lived six years and seven months since the death of
Noma, and has a life expectancy of seven point one years.








Appellant also requested an evidentiary hearing, Ato show the court how much of [Appellant=s] attorney[>s] fees
should be awarded from the probate funds,@ and prayed that the court order Appellee Ato return the funds to the estate, withdraw her Lis Pendens notice,
pay the debts of the estate, make a fair accounting to [Appellant], deal with
the trust and perform the rest of her duties in a fair and responsible manner.@

Appellant=s other December 2004 filing also contained these claims, listing his Areimbursement credit@ above as Ahomestead
claim for life estate@ of $78,000
and Aprospective claim@ for monthly rental value of $85,000, $5,000 for appellate attorney=s fees, AC&C
additional appella[te] costs@ of $389.98, and $8,283.20 for combined funeral expenses and tombstone
costs.  It also contained the rest of his
claims at issue here and their dollar values, and concluded with, AClaimant requests that the above claims be allowed, approved, and
fixed as a variety of types of debts against the assets of the estate securing
the indebtedness and paid according to the types of obligations which each
claim is.@













In contrast to Ayala,
in which the creditor requested the sale of the deceased=s condominium to satisfy the deceased=s purchase-money debt that the condominium secured at the same time
that it filed its claim against the estate, here, Appellant filed overlapping
lists, one an incomplete listing, and requested payment from the estate=s assets without specifying which, if any, assets secured each
claim.  See Ayala, 19 S.W.3d at
478.  Also unlike Ayala, Appellant=s lists were not filed together, and there was no erroneous allowing
of the claims by the trial court; Appellee clearly rejected them.  See id. 
Although section 313 may have no provision barring a prematurely filed
suit, Appellant=s filings,
lacking all of the characteristics that the Ayala court found
relevant to its holding, such as the motion to require sale filed on the same
day as its claim against the estate, the facts supporting its secured
purchase-money claim, and its specific request for relief through the sale of
the debt-secured property, do not constitute a Asuit@ under
section 313.  Cf. id. at 479.  When we add to this the additional
inconsistency of Appellant=s filing on June 9, 2005, of a AMotion to Protest Denial of Certain Claims,@ seeking an evidentiary hearing on all of the claims denied by
Appellee, we conclude that the trial court did not err by ruling Appellant=s claims were barred by section 313. 
Because Appellant failed to bring suit on any of the claims rejected by
Appellee[11]
within the ninety-day period, they were barred by section 313.  See Tex.
Prob. Code Ann. ' 313.  We overrule Appellant=s fifth issue and his second point under his first issue.  We also overrule his third issue, because,
based on these facts, the trial court had both legally and factually sufficient
evidence to generate its fact findings on timing.  See City of Keller, 168 S.W.3d at 827;
Garza, 395 S.W.2d at 823.  Because
of our disposition on these issues, we need not address Appellant=s remaining issues with regard to res judicata.  See Tex.
R. App. P. 47.1.

CONCLUSION

Having overruled all of
Appellant=s issues, we
affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
B:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 








DELIVERED:  May 17, 2007











[1]See Tex. R.
App. P. 47.4.





[2]David became Ray=s successor-in-interest in Noma=s estate at Ray=s death.  Except where inappropriate, we refer
collectively to David and Ray as AAppellant.@





[3]Appellant submitted a claim for AC & C additional appella[te]
costs of $389.98,@ and, at the evidentiary hearing,
entered into the record an account of these costs.  AC&C@ apparently refers to costs incurred by the law firm
representing Appellant, Crampton & Crampton.  Appellant=s attorney informed the trial court that these Acosts@ were charges for Federal Express,
law library use for research, and Kinko=s copying, among other charges.  Appellant mischaracterized Acosts@ here as what are really additional
attorney=s fees.  See Flint & Assocs. v.
Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 626‑27 (Tex.
App.CDallas 1987, writ denied) (stating
that expenses such as photocopies and postage make up the overhead of a law
practice and fall under the category of attorney=s fees because they are considered
in setting hourly billing rates). 
Because these Aadditional appella[te] costs@ were actually attorney=s fees, they were not recoverable
as costs under our June 17, 2004 judgment.





[4]The motion was entitled, AMOTION TO PROTEST DENIAL OF CERTAIN
CLAIMS, MOTION TO OFFSET A PORTION OF SUCH CLAIMS AGAINST PROPERTY IN WHICH
[APPELLANT] HAS AN INTEREST, MOTION FOR REIMBURSEMENT AND FOR PAYMENT, MOTION
TO TRANSFER TITLE ON SEPARATE PROPERTY, MOTION FOR FINAL ACCOUNTING AND
DISTRIBUTION.@





[5]We note that Appellant sought
$389.98 and that is amount that Appellee rejected, whereas the trial court=s findings recite the amount
claimed by Appellant as $398.98.





[6]Appellant requested at the hearing
that the trial court take judicial notice Aof all pleadings filed in this cause and all proceedings
had herein.@ 
The court granted Appellant=s request.





[7]The proposed jury issue is closer
to Appellant=s post‑trial prospective
claim for rent, but Appellant does not argue this.  He also appears to argue that the trial court
made an incorrect fact finding because he filed his homestead claims post‑jury
trial; however, filing the claim after the jury trial would not render
incorrect a finding that Appellant did not request the issue in the jury
trial.

Even assuming that Appellant did
request the same issue at trial, the trial court would not have erred by not
submitting it to the jury.  Appellant
admits in his brief that the issue of Appellant=s lost Alife estate@ was not in either party=s trial pleadings.  A party is not entitled to the submission to
the jury of any question not raised by that party=s affirmative written
pleading.  See Tex. R. Civ. P. 278.  The portion of the trial testimony submitted
by Appellant at the hearing is Appellee=s witness=s testimony with regard to the residence=s fair rental value, 1968-1998,
presented to demonstrate an offset to the estate with regard to Appellant=s reimbursement claim for taxes and
other property expenses.  Appellant cross‑examined
the expert, but only with regard to a different piece of property.  Rule 278 provides that the court shall submit
questions to the jury which are raised by the written pleadings and the
evidence.  Id.  Neither Appellant=s written pleadings nor the
evidence at trial provided any basis for the complained‑of homestead
issue.

In issue one, points
three and six, Appellant argues that he was not required to request jury issues
on matters not within the parties= pleadings and that he was entitled to continue to live in
the separate property homestead. However, he has provided no reason why his
homestead‑related claims should not have been pled in his counter‑petition,
only that they were not.  And even
assuming that Appellant had stated a valid cause of action for a Ahomestead claim for life estate,@ it would have been barred by res
judicata.  See Laster v. First
Huntsville Props., 826 S.W.2d 125, 129 (Tex. 1991) (stating that while a
homestead right is analogous to a life estate, it is not identical because one=s homestead rights can be lost
through abandonment); Steger v. Muenster Drilling Co., 134 S.W.3d 359,
368 (Tex. App.CFort Worth 2003, pet. denied)
(stating that res judicata requires proof of a prior final judgment on the
merits by a court of competent jurisdiction, identity of parties, and a second
action based on the same claims as were raised or could have been raised in
the first action based on subject matter). 





[8]This much is accurate.  Although appeals generally may be taken only
from final judgments, probate proceedings are an exception to the Aone final judgment@ rule.  De Ayala v. Mackie, 193 S.W.3d 575,
578 (Tex. 2006). Multiple judgments, final for purposes of appeal, can be
rendered on certain discrete issues in probate cases, based on the need to
review controlling, intermediate decisions before an error can harm later
phases of the proceeding.  Id.; Lehmann
v. Har‑Con Corp., 39 S.W.3d 191, 192, 195 (Tex. 2001). 





[9]However, this is unclear to us
because Appellant does not explain how Roach applies to his facts.





[10]If not, then we overrule Appellant=s first point of his first issue
under rule 38.1(h).  Tex. R. App. P. 38.1(h) (requiring an
appellant=s brief to contain a clear and
concise argument for the contentions made with appropriate citations to
authorities and the record); see Tex. Mexican Ry. Co. v. Bouchet, 963
S.W.2d 52, 54 (Tex. 1998) (stating that an issue is sufficient if it directs
the appellate court to the error about which complaint is made). 





[11]With regard to the funeral expenses
in his fifth point to his first issue, Appellant paid these and was entitled to
claim reimbursement from Appellee. See Tex.
Prob. Code Ann. '' 320-320A.  He did so in the first trial, and the trial
court entered judgment on the jury=s verdict on Appellant=s behalf with regard to his reimbursement claim for funeral
expenses and monument expense in the sum of $1,227.20, and ordered the estate
to pay it.  Therefore, even if Appellant
had met section 313's requirements, res judicata would have barred this claim.  See Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 628-29 (Tex. 1992) (stating that res judicata, in its issue
preclusion sense, prevents relitigation of particular issues already resolved
in a prior suit).

The same reasoning
would have also applied to his claims for attorney=s fees and court reporter
costs.  See id.  In the first trial, Appellant asserted in his
counterclaim that he was entitled Ato receive all reasonable and necessary attorney=s fees and costs incurred in the
defense and appeal of this action.@ Appellant does not claim that he raised attorney=s fees and costs as a potential
jury issue or that such an issue was denied. 
Because he pled it, however, he could have requested it as long as he
could demonstrate that he was so entitled. 
See Tex. R. Civ. P.
278.  The trial court=s judgment concluded with the
statement, AAll relief not expressly granted
herein is DENIED,@ thereby denying Appellant=s request in his pleadings for jury
trial attorney=s fees and costs and for appellate
attorney=s fees.