## CENTURION PLANNING CORPORATION, INC. and Thomas C. Knickerbocker, Appellants,

### v.

## SEABROOK VENTURE II, Appellee.

### No. 01–02–00518–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 9, 2004.

Rehearing Overruled May 27, 2005.

---

Macon D. Strother, Strother, Keiter & Mulder, P.C., Houston, TX, for Appellant.

Kyle R. Sears, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

Appellants, Centurion Planning Corporation, Inc. (Centurion) and Thomas C. Knickerbocker (Knickerbocker), challenge the trial court's judgment, entered after a jury verdict, declaring that Centurion's mechanic's and materialman's lien on real property owned by appellee, Seabrook Venture II (Venture), was null and void because there was no written contract between Centurion and Venture and because Centurion did not have any lien rights on

the property as Centurion was not engaged in the practice of engineering[1] and the lien was fraudulent.[2]

In four issues, Centurion and Knickerbocker contend that the trial court erred in (1) submitting to the jury a question concerning whether Centurion and Knickerbocker made, presented, or used a fraudulent lien with the intent to cause Venture to suffer financial injury; (2) applying the Uniform Declaratory Judgment Act[3] to Knickerbocker personally and holding him personally liable for filing a fraudulent lien; (3) excluding evidence that Centurion was "in compliance with the rules and regulations of the Texas Board of Professional Engineers"; and (4) submitting a jury instruction that Centurion and Knickerbocker assert constituted an impermissible comment on the weight of the evidence. We affirm.

### Facts

On October 20, 1998, Theodore McCollum Jr. (McCollum) entered into an earnest money contract with Bayport 47 Limited to acquire a 53–acre tract of land in Seabrook, Texas. On January 20, 1999, McCollum purchased 14 acres of the 53–acre tract and conveyed it to Seabrook United Methodist Church. One month later, McCollum purchased the remaining 39 acres.

On August 19, 1999, McCollum, on behalf of McCollum Interests, L.L.C., entered into a joint venture agreement with John Boswell, on behalf of Pacific Ride Development Company, L.L.C. This agreement created Venture for the purpose of developing the 39 acres into a housing subdivision. The following day, McCollum conveyed the 39 acres to Venture.

Following the creation of Venture, McCollum contacted Knickerbocker, the President and sole shareholder of Centurion, and requested that Centurion prepare a preliminary plat for the 39 acres and submit it to Seabrook for approval. McCollum specified that the plat had to meet all of the city's conditions and ordinances and be approved without requiring any variances. Knickerbocker orally agreed to McCollum's terms, and Centurion began working on the preliminary plat.

In October 1999, McCollum and Kickerbocker met with several city officials to review the initial plat prepared by Centurion. At this meeting, the city officials discovered several problems with the plat that needed to be corrected before it could be submitted. McCollum instructed Knickerbocker to make the necessary changes, but Knickerbocker submitted the plat without doing so.

When McCollum learned what Knickerbocker had done, he went to Seabrook City Hall and recovered all documents on file relating to the plat. McCollum then sent a letter to Centurion terminating its services because McCollum "had a lack of confidence" in Centurion and "was disgusted" that Knickerbocker had not done what McCollum had asked him to do. In response, Knickerbocker sent a letter to McCollum demanding payment in the amount of $39,416.30 for work performed by Centurion, but McCollum refused to pay.

---

1. *See* TEX. PROP.CODE ANN. § 53.021(c) (Vernon Supp.2004–2005).

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 12.001–.007 (Vernon 2002 & Supp.2004–2005).

3. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997).

Knickerbocker subsequently filed, on behalf of Centurion, a Notice of Claim of Lien and Affidavit of Mechanic's and Materialman's Lien on the entire 53–acre tract of land, including the 14 acres owned by Seabrook United Methodist Church.[4] Knickerbocker filed the lien for "labor and materials" provided to Venture in the amount of $39,416.30. McCollum requested that Centurion release the lien from 39 acres owned by the Venture, but Knickerbocker refused.

Venture then filed this lawsuit seeking a declaration that Centurion's lien was null and void because Centurion and Knickerbocker had violated certain provisions of the Property Code and the former Engineering Practice Act.[5] Moreover, Venture alleged that Centurion and Knickerbocker had violated section 12.002 of the Civil Practice and Remedies Code because they knowingly had made, presented, and used a fraudulent lien.[6] In response, Centurion and Knickerbocker filed counterclaims alleging· that Venture owed Centurion $18,301.66 and that Centurion was entitled to foreclose on the lien for this amount.

Following a jury trial, the trial court declared that Centurion did not have any lien rights or lien claims against Venture and that Centurion's lien against the 39 acre property was "null, void, invalid, unenforceable and of no effect" because (1) there was no written contract between Venture and Centurion; (2) Centurion and Knickerbocker had violated the former Engineering Practice Act and were therefore not entitled to a lien under Property Code section 53.021(c); and (3) Centurion and Knickerbocker had violated Civil Prac-

tice and Remedies Code section 12.002 by making, presenting, and using the lien with the knowledge that it was a fraudulent lien. The trial court awarded Venture statutory damages, exemplary damages, attorney's fees, reasonable expenses, and costs.

**Fraudulent Lien Question**

In their first issue, Centurion and Knickerbocker argue that the trial court erred in submitting to the jury a question concerning whether Centurion and Knickerbocker made, presented, or used a fraudulent lien with the intent to cause Venture to suffer financial injury because (1) the question was "immaterial and of no legal consequence," (2) there was no evidence that they made, presented, or used a document with knowledge that the document was a fraudulent lien, and (3) the instruction accompanying the question was defective.

Question number 7 of the jury charge reads as follows:

> Did Centurion or Knickerbocker make, present or use a document with knowledge that the document was a fraudulent lien or claim against real property or an interest in real property with the intent that the document be given the legal effect of evidencing a valid lien or claim against real property or an interest in real property with the intent to cause [Venture] to suffer financial injury?

> A lien is fraudulent if the person who files it has actual knowledge that the

---

4.  Centurion subsequently released its lien on this portion of the tract.

5.  Act of May 28, 1937, 45th Leg., R.S., ch. 404, 1937 Tex. Gen. Laws. 816, 816–26, *repealed by* Act of April 26, 2001, 77th Leg., R.S., ch. 1421, § 13(a), 2001 Tex. Gen. Laws

5020 (hereinafter, "the former Engineering Practice Act") (current version at Tex. Occ. Code Ann. §§ 1001.001–.604 (Vernon 2004)).

6.  *See* Tex. Civ. Prac. & Rem.Code Ann. § 12.002 (Vernon 2002).

lien was not valid at the time it was filed.

The jury answered this question "yes" as to both Centurion and Knickerbocker.

### *Materiality*

■ Centurion and Knickerbocker argue that question number 7 was immaterial because it premised a finding of liability on a statute, section 12.002 of the Civil Practice and Remedies Code, which, they assert, does not apply to the facts of this case. An appellate court may disregard a jury finding on a question that is immaterial. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). A jury question is immaterial if it should not have been submitted, if it was rendered immaterial by other findings, or if it called for a finding not within the jury's province, such as a question of law. *Id.*

Centurion and Knickerbocker contend that the Legislature did not intend for Chapter 12 of the Civil Practice and Remedies Code to apply to a mechanic's and materialman's lien filed under the laws of the State of Texas and that, therefore, question number 7 was immaterial and should not have been submitted to the jury. Centurion and Knickerbocker assert that the Legislature enacted Chapter 12, and section 12.002 in particular, to "protect citizens from persons, particularly members of an anti-government group called 'the Republic of Texas,' who were flooding courts and clerks' offices with the filing of fake documents purporting to be under laws other than the laws of the State of Texas."

Matters of statutory construction are questions of law for the courts to decide. *Harris County Water Control and Improvement Dist. v. Duke*, 59 S.W.3d 333, 335–36 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Our objective in construing a statute is to determine and give effect to the intent of the lawmaking body. *Id.* at 336. In so doing, we look first to the plain and common meaning of the statute's words. *Id.* We also construe the statute in light of the entire body of law existing at the time of its enactment. *Id.* Further, we consider the entire statute, not simply the disputed portions. *Id.* Each provision must be construed in the context of the entire statute of which it is a part. *Id.* We also should not adopt a construction that would render a law or provision absurd or meaningless. *Id.* In construing a statute, we may consider (1) the object sought to be obtained; (2) the circumstances under which the statute was enacted; (3) its legislative history; (4) any common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) any administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998). We review Chapter 12 of the Civil Practice and Remedies Code with these rules in mind.

Section 12.002 provides as follows:

(a) A person may not *make, present, or use a document* or other record *with:*

   (1) *knowledge that the document* or other record *is* a fraudulent court record or *a fraudulent lien* or claim against real or personal property or an interest in real or personal property;

   (2) *intent that the document* or other record *be given the same legal effect* as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, *evidencing a valid lien* or claim against real or personal prop-

erty or an interest in real or personal property; and

    (3) intent to cause another person to suffer:

        (A) physical injury;

        (B) financial injury; or

        (C) mental anguish or emotional distress.

  (b) A person who violates Subsection (a) is liable to each injured person for:

    (1) the greater of:

        (A) $10,000; or

        (B) the actual damages caused by the violation;

    (2) court costs;

    (3) reasonable attorney's fees; and

    (4) exemplary damages in an amount determined by the court.

TEX. CIV. PRAC. & REM.CODE ANN. § 12.002 (Vernon 2002) (emphasis added).

    ■ There is nothing in the plain language of section 12.002 to indicate, as Centurion and Knickerbocker maintain, that this section applies *exclusively* to cases where members of anti-government groups file fake documents "purporting to be under laws other than the laws of the State of Texas" from bogus " 'common-law' courts." The Legislature could have chosen to limit the application of Chapter 12 to documents or records from sham courts, but it did not expressly do so. In fact, Chapter 12 is entitled "Liability Related to a Fraudulent Court Record *or a Fraudulent Lien or Claim* Filed Against Real or Personal Property." TEX. CIV. PRAC. & REM. CODE ANN. §§ 12.001–.007 (Vernon 2002 & Supp.2004–2005) (emphasis added). The plain language of section 12.002(a) expressly prohibits a person from making, presenting or using a document (1) with knowledge that the document is "a fraudulent court record *or a fraudulent lien* or claim" against real property, (2) intent that the document be given the same legal effect as a court record or document of a court evidencing a valid lien or claim against real property, and (3) intent to cause another person to suffer financial injury. *Id.* § 12.002(a) (emphasis added). Section 12.002(a)(2) does not limit liability only to fraudulent court documents or records which are made, presented or used by anti-government groups. Rather, it expressly applies to any document or record that is "a fraudulent lien or claim" against real or personal property and that is intended to be "given the same legal effect" as a court record or document "evidencing a valid lien or claim against real property." *Id.* § 12.002(a)(1), (2).

    Moreover, we disagree with the assumption, implicit in Centurion's and Knickerbocker's argument, that the Legislature concluded that a fraudulent lien that purports to be filed under laws other than the laws of the State of Texas from bogus courts is more damaging to Texas property owners than fraudulent liens that purport to be filed under the actual laws of this state. Our review of the plain and common meaning of the words of Chapter 12 reveals that the Legislature intended to provide a civil action for injunctive relief and monetary damages to all persons owning an interest in real or personal property against which a fraudulent lien is filed, not just victims of anti-government groups filing purported liens from sham courts. In fact, section 12.003 actually distinguishes between cases involving "fraudulent liens" and "fraudulent judgment liens." It provides that, "in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property," the obligor or debtor, or a person who owns an interest in the real or personal property may bring an action. *Id.* § 12.003(a)(8). In the case of a "fraudulent judgment lien," the person against

whom the judgment is entered may bring an action. *Id.* § 12.003(a)(7).

Accordingly, we disagree with Centurion and Knickerbocker's contention that Chapter 12 does not apply to the facts of this case, and we hold that the trial court did not err in submitting question number 7 to the jury on the grounds that it was "immaterial."

### No Evidence

Centurion and Knickerbocker also argue that the trial court erred in submitting question number 7 to the jury because there was no evidence that they made, presented, or used a document with knowledge that the document was fraudulent "as defined by Gov.Code § 51.901(c)." *See* TEX. GOV'T CODE ANN. § 51.901(c) (Vernon 1998).

When reviewing a legal sufficiency question, we consider only the evidence and inferences that tend to support a finding, and we disregard all evidence and inferences to the contrary. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* More than a scintilla of evidence exists when the evidence, as a whole, supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997).

Centurion and Knickerbocker point out that, although the term "fraudulent" is not defined in Chapter 12, section 12.006 references that term as it is used in the Government Code. Section 12.006 provides, in pertinent part, as follows:

The court shall award the plaintiff the costs of bringing this action if:

(1) the plaintiff prevails; and .

(2) the court finds that the defendant, at the time the defendant caused the recorded document to be recorded or filed, knew or should have known that the recorded document is *fraudulent, as described by Section 51.901(c), Government Code.*

TEX. CIV. PRAC. & REM.CODE ANN. § 12.006(a) (emphasis added). Section 51.901(c) of the Government Code provides that, "[f]or purposes of this section," a document or instrument "is presumed to be fraudulent" if:

[T]he document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and:

(A) is not a document or instrument provided for by the constitution or laws of this state or of the United States;

(B) is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person; or

(C) is not an equitable, constructive, or other lien imposed by a court with the jurisdiction created or established under the construction or laws of this state or of the United States.

TEX. GOV'T CODE ANN. § 51.901(c)(2) (Vernon 1998).

Centurion and Knickerbocker note that Chapter 51 of the Government Code "was part of the same bill" that enacted Chapter 12 of the Civil Practice and Remedies Code. They also note that "the history preceding the passage of [section 12.002] and [s]ection 51.901(c) show[s] that these two code sections were enacted to deny legitimacy to fake documents without re-

gard to the validity of the claimed interest or the claims of the parties." Centurion and Knickerbocker assert, thus, that the Legislature intended for the term "fraudulent" as used in Chapter 12 to have the same meaning as that term is described in Government Code section 51.091(c). Moreover, they argue that, because they proved that their lien was filed under the laws of the State of Texas, the lien was not fraudulent under section 51.091(c).

■ However, section 51.091(c) does not define the term "fraudulent"; it establishes a "presumption" that a document or instrument is fraudulent under certain circumstances. Moreover, section 12.006, entitled "Plaintiff's Costs," simply provides the circumstances under which a plaintiff "shall" recover the "costs of bringing the action" in addition to the plaintiff's damages awarded under section 12.002. If the Legislature had wanted to define the term "fraudulent" as used for all purposes in Chapter 12, it could have done so. Instead, the Legislature referenced the term fraudulent "as described" in Government Code section 51.901(c) in regard only to the recovery of plaintiff's costs in section 12.006. We cannot read section 12.006's reference to the term fraudulent "as described by Section 51.901(c), Government Code" as providing a definition of the term for all of Chapter 12.

■ In conducting our legal sufficiency review of the evidence, we note that Property Code section 53.021(c) provides, in pertinent part, that "[a]n architect, *engineer*, or surveyor who prepares a plan or plat under or by virtue of a *written contract* with the owner ... in connection with the actual or proposed design, construction, or repair of improvements on real property ... has a lien on the property." TEX. PROP.CODE ANN. § 53.021(c) (Vernon Supp.2004–2005) (emphasis added). Here, McCollum testified that he did not enter into a written contract on behalf of himself or Venture with either Knickerbocker or Centurion. Moreover, Knickerbocker testified that, after McCollum refused to pay for work that Centurion had done, Knickerbocker, on Centurion's behalf, filed a mechanic's and materialman's lien against the entire 53–acre tract of land. Taken together, this testimony constituted more than a scintilla of evidence establishing that Knickerbocker had violated section 12.002 when he "made, presented, or used the lien" knowing, based on the lack of a written contract, that the lien was invalid and intending that it be given the same legal effect as a valid lien. Additionally, because Centurion conceded that Knickerbocker was acting on its behalf, Centurion was subject to vicarious liability for Knickerbocker's violation of section 12.002. *See Baptist Mem'l Hosp. System v. Sampson,* 969 S.W.2d 945, 947 (Tex. 1998) (noting that, under doctrine of respondeat superior, employer is vicariously liable for tortious acts of employee acting within scope of employment).

Accordingly, we hold that the trial court did not err in submitting question number 7 to the jury on the grounds that the evidence was legally insufficient to support the submission of the question.

### Defective Definition

Centurion and Knickerbocker next argue that the trial court erred in submitting question number 7 to the jury because the question contained a defective instruction. As noted above, the trial court instructed the jury that "[a] lien is fraudulent if the person who files it has actual knowledge that the lien was not valid at the time it was filed." Centurion and Knickerbocker assert that, instead of submitting this instruction, the trial court should have defined the term "fraudulent lien" by referencing the presumption set out in Government Code section 51.901(c).

However, to preserve error in the jury charge, a party must timely and plainly make the trial court aware of the complaint and obtain a ruling. Tex.R. Civ. P. 274; *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992). A party is required to object before the trial court submits an erroneous question, instruction or definition. Tex.R. Civ. P. 274; *Payne*, 838 S.W.2d at 241.

■■■ At the charge conference, Centurion and Knickerbocker objected to question number 7 as follows:

> We especially object to Question No. 7. That relates to the pleading and claim of [Venture] that [Centurion and Knickerbocker] violated section 12.00[2] of the Texas Civil Practice and Remedies Code. And without going over the same objections that I could in my motion for directed verdict, it's just generally our grounds ... that there's no evidence whatsoever that [Centurion and Knickerbocker] violated the section as contended by the Legislature of the state of Texas, that the Legislature intended by the enactment of this section that it would be a violation if anyone attempted to file a lien that was not pursuant to the laws of the state of Texas or the Constitution of the state of Texas. And the lien affidavit and the evidence clearly shows that my client, [Centurion and Knickerbocker], were attempting to file the lien affidavit pursuant to the state of Texas and this Constitution of the state of Texas. Even if [Venture] is correct, that there were mistakes or errors or incorrect information set forth in the lien affidavit, we contend that ... would not make [Centurion and Knickerbocker] liable under this Act. Therefore, [we] *object on the grounds of no evidence.*

(Emphasis added.) Centurion and Knickerbocker objected to question number 7, not on the grounds that it included a defec-tive instruction, but "on the grounds of no evidence." A party cannot enlarge on appeal an objection made in the trial court. *Operation Rescue–Nat'l v. Planned Parenthood of Houston and Southeast Tex., Inc.*, 937 S.W.2d 60, 70 (Tex.App.-Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546 (Tex.1998). An objection on appeal that is not the same as that which was urged at trial presents nothing for appellate review. *Id.* Nor can a party raise a new objection to the trial court's charge for the first time on appeal. Tex. R.App. P. 33.1(a); Tex.R. Civ. P. 274. Accordingly, we hold that Centurion and Knickerbocker have waived any error with respect to the submission of the complained of instruction.

We overrule Centurion's and Knickerbocker's first issue.

## Declaratory Judgment

In their second issue, Centurion and Knickerbocker argue that the trial court erred in applying the Declaratory Judgment Act to Knickerbocker personally and in finding him personally liable for filing a fraudulent lien because "there was no justiciable controversy between [Venture] and Knickerbocker."

■■■ A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.* If a justiciable controversy does not exist between the parties, a court must dismiss the case for lack of jurisdiction, even if the issue is not raised by the parties. *Lavely v. Heafner*,

976 S.W.2d 896, 897 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

The jury found that both Centurion and Knickerbocker had made, presented, or used a document with knowledge that the document was a fraudulent lien or claim against real property or an interest in real property with the intent that the document be given the legal effect of evidencing a valid lien or claim against real property or an interest in real property and with the intent to cause Venture to suffer financial injury. The trial court then declared that Centurion and Knickerbocker had violated (1) Chapter 53 of the Property Code, (2) the former Texas Engineering Practice Act, and (3) Civil Practice and Remedies Code section 12.002.

Centurion and Knickerbocker assert that Venture did not plead or prove any theory for a judgment against Knickerbocker personally and that there were, therefore, no rights to be declared as between Venture and Knickerbocker. They note that they "objected to [Venture's] attempt to pierce the corporate veil in its proposed judgment," and they contend that Knickerbocker, as an officer of Centurion, was not liable to the Venture for its damages, attorney's fees, expenses and costs.

However, it is a "longstanding rule" in Texas that "a corporate agent is personally liable for his own fraudulent or tortious acts." *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex.2002). In *Miller*, the Texas Supreme Court held that a corporate agent may be held personally liable under the Deceptive Trade Practices—Consumer Protection Act[7] for personally making misrepresentations. *Id.* The Court explained that such liability is based on the agent's own actions, not his status as an agent. *Id.* We find this analysis equally applicable to violations of Chapter 12 of the Civil Practice and Remedies Code.

Here, as noted above, the jury expressly found that Knickerbocker personally made, presented, or used a document with the knowledge that the document was a fraudulent lien or claim against real property or an interest in real property with the intent that the document be given the legal effect of evidencing a valid lien or claim against real property or an interest in real property and with the intent to cause Venture to suffer financial injury. The evidence supports the jury's finding and the trial court's declarations.

Knickerbocker testified that Centurion had offered and had attempted to practice engineering services; however, Knickerbocker was not a licensed engineer. Moreover, the evidence indicated that Centurion did not have a regular, full-time employee who was a licensed engineer and who provided engineering services or supervised the provision of any engineering services.[8] Although Centurion and Knickerbocker presented Dexter Jones as Centurion's "Director of Engineering," the jury expressly found that Jones was "not a regular[,] full-time employee of Centurion" during the time in question. Jones, himself, testified that he was an "independent

---

7. TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 2002 & Supp.2004–2005).

8. The former Engineering Practice Act specified that a corporation could not hold itself out to the public as being engaged in the practice of engineering unless all of its engineering services were "either personally per-

formed by a licensed engineer or under the direct supervision of a licensed engineer who [was] a regular full-time employee." Act of May 27, 1997, 75th Leg., R.S., ch. 344, § 19, 1997 Tex. Gen. Laws 1462, 1468, *repealed by* Act of April 26, 2001, 77th Leg., R.S., ch. 1421, § 13(a), 2001 Tex. Gen. Laws 5020.

contractor" for Centurion and was not a full-time employee.

Moreover, McCollum testified that he did not enter into a written contract on behalf of himself or Venture with either Knickerbocker or Centurion. Knickerbocker testified that, after McCollum refused to pay for work that Centurion had done, Knickerbocker, on Centurion's behalf, filed the mechanic's and materialman's lien against the entire 53–acre tract of land. In fact, Knickerbocker signed, verified, and personally mailed the lien for filing.

Taken together, this evidence demonstrated that Knickerbocker violated section 12.002 when he "made, presented, or used" the lien knowing that Centurion was not entitled to the lien under Property Code section 53.021(c) because (1) there was no written contract between Centurion and Venture and (2) Centurion was not engaged in the practice of engineering in compliance with the requirements of the former Engineering Practice Act. Accordingly, we hold that Venture established that a "real and substantial controversy" existed between itself and Knickerbocker.

We overrule Centurion's and Knickerbocker's second issue.

### Exclusion of Evidence

In their third issue, Centurion and Knickerbocker contend that the trial court abused its discretion in excluding an exhibit which was offered to show that Centurion was in voluntary compliance with the rules and regulations of the Texas Board of Professional Engineers and the former Engineering Practice Act.

■■■■ A trial court's decision to exclude evidence is reviewed under an abuse of discretion standard. *City of Browns-*

*ville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). In addition to showing an abuse of discretion, a party complaining of error in the exclusion of evidence must also show that the trial court's error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *Id.* at 753–54; *see* TEX.R.APP. P. 44.1(a)(1).

Centurion and Knickerbocker offered into evidence Defendants' Exhibit 15A, a certified copy of a document from the Texas Board of Professional Engineers, which states that, as of January 20, 1999, Centurion was in "voluntary compliance" with the regulations of the Texas Board of Professional Engineers and the former Engineering Practice Act. The trial court sustained Venture's objection to the document as irrelevant and as hearsay. Centurion and Knickerbocker argue that the exhibit should have been admitted into evidence because "the central issue to [Venture's] claims and defenses was that Centurion violated the [former] Texas Engineering Practice Act."

■■■■ However, Venture did not allege simply that Centurion had violated the former Engineering Practice Act. Rather, Venture alleged that Centurion was not entitled to be compensated for preparing the preliminary plat because Centurion was not engaged in the practice of engineering because it did not have a licensed engineer as a regular, full-time employee during the period from August to October of 1999 as required by the Act. As noted above, the former Act prohibited a corporation from holding itself out as being engaged in the practice of engineering unless all of its engineering services were "either personally performed by a licensed engineer or under the direct supervision of a licensed engineer who [was] a regular

full-time employee." [9]

Defendants' Exhibit 15A did not specify that Centurion had a licensed engineer as a regular, full-time employee. Nor did it address the appropriate time period. Centurion had worked on the preliminary plat for Venture between August and October of 1999; however, Defendant's Exhibit 15A demonstrates that the Texas Board of Professional Engineers made its determination in January 1999, six months before the time period in question. Accordingly, we hold that the trial court did not abuse its discretion in excluding Defendants' Exhibit 15A on the grounds that it was irrelevant.

We overrule Centurion's and Knickerbocker's third issue.

### Employment Status

Question number 1 of the jury charge asked the jury to make a factual determination concerning the employment status of Dexter Jones. In their fourth issue, Centurion and Knickerbocker contend that the trial court erred in submitting a definition of "employee" and "independent contractor" in question number 1 without the additional instruction that "Centurion was not required to direct the detail" of Jones's work. Centurion and Knickerbocker assert that, without their requested instruction, the included definitions "constituted an impermissible comment on the weight of the evidence." They further contend that the trial court erred in submitting the definition of "independent contractor" because there was insufficient evidence that Jones was in pursuit of an independent business at the time that he worked for Centurion.

■ We review a trial court's decision on the submission of jury definitions and instructions under an abuse of discretion standard, and we note that trial courts have "wide discretion to determine sufficiency of definitions and instructions." *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex.1995). When a trial court refuses to submit a requested instruction, our review is focused upon the issue of whether the request was reasonably necessary to enable the jury to render a proper verdict. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.).

■ Although the court in its charge may not comment directly on the weight of the evidence, the charge is not objectionable because it "incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition." TEX.R. CIV. P. 277. To be a direct comment on the weight of the evidence, the language must suggest the trial court's opinion concerning the issue. *Maddox v. Denka Chem. Corp.*, 930 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1996, no writ).

Question number 1 reads as follows:

Do you find that Dexter Jones was not a regular full time employee of Centurion from August 21, 1999 through October 5, 1999?

An "employee" is a person in the service of another with the understanding, express or implied, that such other person has the right to direct the details of the work and not merely the result to be accomplished.

A person is not acting as an employee if he is acting as an "independent contractor." An independent contractor is a

---

9. Act of May 27, 1997, 75th Leg., R.S., ch. 344, § 19, 1997 Tex. Gen. Laws 1462, 1468, *repealed by* Act of April 26, 2001, 77th Leg., R.S., ch. 1421, § 13(a), 2001 Tex. Gen. Laws 5020.

person who, in pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represents the will of such other person only as to the results of his work and not as to the means by which it is accomplished.

Centurion and Knickerbocker requested that the jury be further instructed that "Centurion was not required to direct the detail of Dexter Jones's work requiring his engineering expertise." However, the trial court refused to include this instruction and the jury subsequently answered the question "yes."

 Centurion and Knickerbocker argue that "the court's instruction left little room for the jury to find any[ ]thing other than that [Jones] was not a full-time employee because it instructed that if Jones did not submit himself to the control of Centurion and it's [sic] owner, a non-engineer, with respect to the *details* of engineering work, then Jones was an independent contractor." However, Centurion and Knickerbocker cite no authority to show either that their requested instruction was a correct statement of the law or that they were entitled to have the instruction submitted to the jury. Moreover, Centurion and Knickerbocker do not logically explain how the trial court's refusal to submit their additional instruction suggested to the jury the trial court's opinion concerning the issue.

In contrast, the definitions submitted by the trial court, which followed verbatim the definitions provided by Texas Pattern Jury Charge,[10] have been held to be adequate instructions on employee-independent contractor law. *See Weidner v.*

*Sanchez,* 14 S.W.3d 353, 376 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Accordingly, we hold that the trial court did not abuse its discretion in submitting the definitions and in refusing Centurion's and Knickerbocker's requested instruction on the grounds that the definitions constituted an improper comment on the weight of the evidence.

 In regard to Centurion's and Knickerbocker's assertion that there was "insufficient evidence that Jones was in pursuit of an independent business," we conclude that, if a person is retained as an independent contractor, then he is necessarily pursuing a business independent from that of the person who retains him. Here, Jones testified that he worked as an independent contractor for Centurion and that he was not a full-time employee. While Jones was working for Centurion, he had other clients and he worked part-time for Centurion and part-time for his other clients. Additionally, Nancy Heeth, Centurion's bookkeeper, testified that Jones was paid by the hour and that Centurion did not withhold state or federal taxes from his paycheck. Accordingly, we hold that the trial court did not abuse its discretion in submitting the definitions to the jury on the grounds that there was insufficient evidence that Jones was in pursuit of an independent business.

We overrule Centurion's and Knickerbocker's fourth issue.

### Conclusion

We affirm the judgment of the trial court.

---

**10.** *See* 2 COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 7.1, 7.8 (2d. ed 2002).