COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-127-CV
 
  
TAYLOR 
ELECTRICAL SERVICES, INC.                      APPELLANT/APPELLEE
  
V.
  
ARMSTRONG 
ELECTRICAL SUPPLY COMPANY         APPELLEE/APPELLANT
  
  
------------
 
FROM 
THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
        Both 
parties appeal from the judgment entered on the jury’s verdict primarily in 
favor of Taylor Electrical Services, Inc. in its breach of contract, fraud, and 
Deceptive Trade Practices Act (DTPA) claims against Armstrong Electrical Supply 
Company. Taylor challenges the trial court’s entry of an award for 
Armstrong’s attorney’s fees.
        Armstrong 
raises sufficiency challenges to the evidence that supports the finding of 
fraud, the amount of damages the jury awarded, and the knowledge element on the 
fraudulent mechanic’s and materialmen’s liens claim. Armstrong also contends 
that the trial court erred by concluding that Taylor had standing to challenge 
the mechanic’s and materialmen’s liens under section 12.003 of the civil 
practice and remedies code. See Tex. 
Civ. Prac. & Rem. Code Ann. § 12.003 (Vernon 2002). We reverse and 
render judgment for Taylor on Armstrong’s attorney’s fees claim but affirm 
the trial court’s judgment in all other respects.
Fact Summary
        Taylor 
is an electrical contractor that was working on replacing interior electrical 
fixtures in two of the Church of Jesus Christ of Latter Day Saints’ churches 
in Denton County. One church was located at 3000 Old North Road in Denton, Texas 
(Denton Project), and the other was located at 1100 Stapleton in Flower Mound, 
Texas (Flower Mound Project).
        Armstrong 
is a subcontractor of electrical supplies that Taylor had used for many years. 
Taylor, through its president Gary Taylor, had an eighteen-year relationship 
with its primary contact at Armstrong, David Nichol. Time was of the essence to 
the church, so Taylor included specific provisions in its suppliers’ work 
orders requiring them to provide supplies by a certain time or liquidated 
penalties would be incurred. The purchase orders for the Denton Project and the 
Flower Mound Project each contained a specific on-site delivery date and 
included a clause that stated, “Delays of receipt will cause delays of 
completion. Liquidated damages apply to this contract.” The on-site delivery 
date was June 8 for the Flower Mound Project and was June 13 for the Denton 
Project. Nichol determined both dates after Gary contacted him about the 
different projects. During these conversations, Gary had specifically told 
Nichol that timely delivery of supplies was critical. Armstrong failed to timely 
deliver all of the materials to either project.
        When 
Armstrong failed to timely deliver all of the materials ordered, Taylor began 
working directly with one of Armstrong’s principals, Doris Armstrong, who 
ultimately disputed the existence of delivery deadlines. Armstrong charged 
Taylor $46,600 on the Flower Mound Project and $19,650 on the Denton Project. 
Eventually, Taylor paid the invoices to Armstrong but deducted $6,110 as its 
liquidated damages due to Armstrong’s late deliveries. Initially, Armstrong 
did not cash one of Taylor’s checks for $7,732.99 for the Flower Mound Project 
or apply a credit to Taylor’s outstanding account. Instead, Armstrong filed 
mechanic’s and materialmen’s liens against both of the church’s properties 
for the full amounts Armstrong had billed to Taylor. Armstrong did not deposit 
the $7,732.99 check until after the liens were filed, on November 27, 2001. At 
the time of trial, Armstrong claimed that it was still owed $6,169.05.
        Taylor 
told Armstrong that its contract with the church would be suspended if anyone 
filed liens on the church’s property and that Taylor could be subjected to 
penalties according to its contract with the church. Taylor set forth the 
existence of the late penalty and the method of calculating it in the Scope of 
Work document that was supposed to be attached to the bid for each project. 
Although Gary admits that he did not attach the Scope of Work document to each 
bid, each bid states that it is subject to penalties for failure to meet 
delivery deadlines. Gary also testified that he and Nichol went over the 
delivery deadlines, guarantees, and penalties clause. Under Taylor’s contract 
with the church, Taylor was obligated to defend and indemnify the church against 
any and all liens filed against church property. Toward that end, Taylor hired 
legal counsel to demand removal of the liens, but ultimately Taylor was forced 
to file suit to procure their removal and to sue to recover its other claimed 
damages for breach of contract, fraud, and deceptive trade practices.
Issues Presented
        In 
Armstrong’s first two points in its appeal, it challenges the sufficiency of 
the evidence to support the jury’s liability and damages award of $13,262 on 
Taylor’s fraud claim. It does not challenge the jury’s findings of either 
liability or damages on Taylor’s breach of contract claim. In Armstrong’s 
third point, it challenges the jury’s finding that it filed the mechanic’s 
and materialmen’s liens with knowledge that it was asserting a fraudulent 
lien. In its fourth point, Armstrong contends that Taylor lacked standing to 
bring a fraudulent lien or fraudulent claim cause of action under section 12.003 
of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 
12.003.
        Taylor’s 
sole point in its appeal attacks the propriety of the award of Armstrong’s 
attorney’s fees of $57,567.50 because Taylor never denied that Armstrong was 
entitled to the unpaid outstanding balance on the supplies that it provided. 
Additionally, Taylor points out that the jury’s findings were primarily in its 
favor, thereby creating only an offset to the award in Taylor’s favor. Taylor 
argues that an offset awarded to a defendant does not make it a “successful 
party” to support the attorney’s fees award under section 38.001 of the 
civil practice and remedies code. See id. § 38.001 (Vernon 1997).
Sufficiency of Evidence - Fraud
        To 
prevail in a cause of action for fraud, one must provide sufficient evidence of 
the elements of fraud, which are (1) a material misrepresentation was made; (2) 
it was false; (3) when the representation was made, the speaker knew it was 
false or the statement was recklessly asserted without any knowledge of its 
truth; (4) the speaker made the false representation with the intent that it be 
acted on by the other party; (5) the other party acted in reliance on the 
misrepresentation; and (6) the party suffered injury as a result. See 
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990) (op. on reh’g), 
cert. denied, 498 U.S. 1098; Trenholm v. Ratcliff, 646 S.W.2d 927, 
930 (Tex. 1983); Kajima Int’l, Inc. v. Formosa Plastics Corp., USA, 15 
S.W.3d 289, 292 (Tex. App.—Corpus Christi 2000, pet. denied).
        A 
brief should concisely state all issues or points presented for review. Tex. R. App. P. 38.1; Bankhead v. 
Maddox, 135 S.W.3d 162, 163 (Tex. App.—Tyler 2004, no pet.). Unless a 
brief flagrantly violates the briefing rules, we will address those issues that 
are fairly included. Tex. R. App. P. 38.1(e), 
38.9; White v. State, 50 S.W.3d 31, 45 (Tex. App.—Waco 2001, pet. 
ref’d). “An issue presented in an appellant’s brief is sufficient if it 
directs the attention of the appellate court to the error about which complaint 
is made.” Bankhead, 135 S.W.3d at 163; Maida v. Fire Ins. Exch., 
990 S.W.2d 836, 839 (Tex. App.—Fort Worth 1999, no pet.).
        Armstrong 
challenges the sufficiency of the evidence to show that there was ever a promise 
to make deliveries of the materials by any specific time or to show that 
Armstrong knew at the time any such representation was made that Armstrong had 
no intention of delivering the materials by a date certain. Armstrong says that 
Taylor produced “no evidence” of and failed to introduce “more than a 
scintilla of evidence” on either of these two elements. Although Armstrong 
never clearly asserts whether it is making a legal or a factual sufficiency 
challenge, we interpret the use of this language as attacking the legal 
sufficiency of the evidence to support the jury’s findings. See Tex. 
Mexican Ry. Co. v. Bouchet, 963 S.W.2d 52, 54 (Tex. 1998).
        In 
determining a “no evidence” point, we are to consider only the evidence and 
inferences that tend to support the finding of the disputed fact and disregard 
all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 
749, 754 (Tex. 2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 
444, 450 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 
661 (1951). Anything more than a scintilla of evidence is legally sufficient to 
support the finding. Cont’l Coffee, 937 S.W.2d at 450; Leitch v. 
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence 
exists if the evidence furnishes some reasonable basis for differing conclusions 
by reasonable minds about the existence of a vital fact. Rocor Int’l, Inc. 
v. Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        A 
“no evidence” point may only be sustained when (1) the record discloses a 
complete absence of evidence of a vital fact; (2) the court is barred by rules 
of law or of evidence from giving weight to the only evidence offered to prove a 
vital fact; (3) the evidence offered to prove a vital fact is no more than a 
mere scintilla; or (4) the evidence establishes conclusively the opposite of a 
vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 
(Tex. 1998), cert. denied, 526 U.S. 1040 (1999).
        Armstrong 
challenges the evidence to support two elements of Taylor’s fraud claim: that 
a false statement was made and that it was made with knowledge of its falsity. 
In response, Taylor points to the evidence that supports the jury’s finding. 
As to a “material misrepresentation,” Taylor points to Nichol’s admission 
that he knew that Taylor would not have been awarded the jobs had Armstrong not 
guaranteed the delivery dates. Both the Armstrongs testified that it was 
Armstrong’s policy not to guarantee delivery dates because their 
suppliers could not guarantee dates to them. But Gary testified about 
discussions with Nichol on the importance of the delivery dates. Further, Gary 
testified that he specifically told Nichol that the church would not award 
Taylor the contracts if Taylor could not meet and guarantee delivery dates. Gary 
said that he and Nichol had discussions regarding delivery dates and how to 
manage them. Gary also explained that he and Nichol agreed that he would type in 
delivery dates as provided to him by Nichol. In other words, Nichol would 
actually tell Gary when to expect delivery, and then Gary would type that date 
on the purchase order. Therefore, even if there was a policy to the contrary, 
there is more than a scintilla of evidence that Armstrong committed to and 
guaranteed delivery dates. This is sufficient to support a finding of a material 
misrepresentation.
        Circumstantial 
evidence of fraud may also be used to support a finding of fraudulent intent, 
the knowledge element that Armstrong says is not supported by any evidence. See 
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986). Evidence 
that Armstrong represented to Taylor that it could deliver certain supplies by a 
date certain, knowing that such a representation was against company policy, is 
sufficient to show knowledge of the falsity of the representation. Additionally, 
it was reasonable for the jury to infer that Nichol’s conceding that Gary 
advised Armstrong the delivery dates were critical ahead of time, and that 
failure to meet delivery dates could result in the loss of Taylor’s contracts 
with the church and monetary penalties being assessed, supports a knowing and 
intentional misrepresentation.
        Thus, 
we conclude that there was more than a scintilla of evidence supporting the 
jury’s fraud finding. We overrule Armstrong’s first point.
Sufficiency of the Evidence - Damages for Fraud
        According 
to the Texas Supreme Court opinion of Formosa Plastics Corp. v. Presidio 
Engineers and Contractors, Inc.,
  
Texas recognizes two measures of direct damages for common-law fraud: the 
out-of-pocket measure and the benefit-of-the-bargain measure. The out-of-pocket 
measure computes the difference between the value paid and the value received, 
while the benefit-of-the-bargain measure computes the difference between the 
value as represented and the value received.
 
The 
out-of-pocket measure allows the injured party “to recover the actual injury 
suffered measured by 'the difference between the value of that which he has 
parted with, and the value of that which he has received.’”
 
 
960 
S.W.2d 41, 49 (Tex. 1998) (citations and footnotes omitted). Armstrong contends 
in its second point that there is insufficient evidence to support the jury’s 
award of $13,262 under either of the recognized measures set forth in Formosa 
Plastics. Again, Armstrong does not plainly state whether it is asserting a 
legal or factual insufficiency point but refers repeatedly to a claim of 
“insufficient evidence” in this portion of its brief. We will therefore 
treat this complaint as a factual sufficiency challenge.
        Taylor 
contends that because Armstrong did not attack the jury’s damages finding by 
way of its motion for new trial, it has waived this complaint on appeal. A 
complaint of factual insufficiency of the evidence to support a jury answer or 
of the excessiveness of the damages found by the jury must have been raised in a 
motion for new trial. Tex. R. Civ. P. 
324(b)(2), (4); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003); Mar. 
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex.), cert. denied, 
525 U.S. 1017 (1998). Taylor argues that Armstrong’s challenges in its motion 
for new trial are confusing, unclear, and multifarious. However, a review of 
Armstrong’s motion for new trial states that it is challenging the jury’s 
findings of damages for fraud in question number 21 in the amount of $13,262 as 
being excessive. Therefore, to the extent that Armstrong’s point on appeal 
challenges the excessiveness of the amount of the jury’s fraud award that was 
challenged in its motion for new trial, we will address it. See C.M. Asfahl 
Agency v. Tensor, Inc., 135 S.W.3d 768, 796 (Tex. App.—Houston [1st Dist.] 
2004, no pet.).
        An 
assertion that the evidence is “insufficient” to support a fact finding 
means that the evidence supporting the finding is so weak or the evidence to the 
contrary is so overwhelming that the answer should be set aside and a new trial 
ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are 
required to consider all of the evidence in the case in making this 
determination, not just the evidence that supports the finding. Mar. Overseas 
Corp., 971 S.W.2d at 406-07.
        There 
are two primary sources of evidence of damages in the trial below. Gary 
testified from two exhibits that the trial court admitted; both are summaries of 
his testimony on damages. Neither the exhibits nor the testimony regarding them 
is clear. However, we can tell from a review of both that Gary testified to 
liquidated or penalty damages of $200 per day for forty-two days, for a total of 
$8,400, and out-of-pocket expenses of $8,089.75, which would total more than 
$16,000. Also, in response to a question on lost profits, Gary testified to as 
much as $48,000 in lost profits. While these amounts do not equal the $13,262 in 
damages the jury found, they are sufficient to support that award. See C.M. 
Asfahl Agency, 135 S.W.3d at 797-98. Because there is evidence supporting a 
damages award that is actually in excess of the jury’s damage award for fraud, 
the finding is not so weak as to require us to set aside that finding. We 
overrule Armstrong’s second point.
Fraudulent Lien Statute
        In 
Armstrong’s third and fourth points, it challenges the jury’s fraudulent 
lien findings as to one of the projects and the trial court’s award of a 
$10,000 penalty against it due to that finding.[1]  
Armstrong says that there is insufficient evidence to show that it knew it was 
filing a fraudulent lien or that it filed it with intent to cause another person 
to suffer injury. Importantly, Armstrong also challenges Taylor’s standing to 
assert a claim under the fraudulent lien and fraudulent claim provisions of 
chapter twelve of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. 
12.001-.007 (Vernon 2002 & Supp. 2004-05).
        Subject 
matter jurisdiction is an issue that may be raised for the first time on appeal; 
it may not be waived by the parties. Bland ISD v. Blue, 34 S.W.3d 547, 
553-54 (Tex. 2000); Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 
S.W.2d 440, 443 (Tex. 1993). The doctrine of standing is “implicit in the 
concept of subject matter jurisdiction.” Tex. Ass’n of Bus., 852 
S.W.2d at 443. We review standing, as a component of subject matter 
jurisdiction, de novo. City of Arlington v. Scalf, 117 S.W.3d 345, 347 
(Tex. App.—Fort Worth 2003, pet. denied).
        Section 
12.002 of the Texas Civil Practice and Remedies Code states that
   
[a] 
person may not make, present, or use a document or other record with:
(1) 
knowledge that the document or other record is a fraudulent court record or a 
fraudulent lien or claim against real or personal property or an interest in 
real or personal property;
 
(2) 
intent that the document or other record be given the same legal effect as a 
court record or document of a court created by or established under the 
constitution or laws of this state or the United States or another entity listed 
in Section 37.01, Penal Code, evidencing a valid lien or claim against real or 
personal property or an interest in real or personal property; and
 
(3) 
intent to cause another person to suffer:
     
(A) physical injury;
     
(B) financial injury; or
     
(C) mental anguish or emotional distress.
 
 
Tex. Civ. Prac. & Rem. Code Ann. § 
12.002(a) (Vernon 2002).
        One 
who violates the fraudulent lien or claim provisions may become liable to an 
injured person to the greater of $10,000 or the actual damages caused by such 
violation in addition to incurring liability for court costs, reasonable 
attorney’s fees, and even exemplary damages as determined by the court. Id. 
§ 12.002(b). District, county, and municipal attorneys, as well as the 
“obligor or debtor, or a person who owns an interest in the real or personal 
property,” are allowed to enjoin such actions or to recover damages. Id. 
§ 12.003(a)(8). Armstrong says that because the liens are filed against the 
church’s property, the church would be the only party with standing to sue 
under the fraudulent lien or claim statute. Armstrong says that the liens simply 
do not create an obligation or debt on Taylor’s part that would entitle it to 
bring this claim. The statute, however, allows property owners as well as 
“obligors or debtors” to pursue its remedies. Id. Unfortunately, 
neither of those terms is defined.
        When 
a statute is clear and unambiguous, we “should give the statute its common 
meaning.” St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 
(Tex. 1997). When language in a statute is unambiguous, we will seek the intent 
of the legislature as found in the plain and common meaning of the words and 
terms used. Id.; In re K.L.V., 109 S.W.3d 61, 65 (Tex. App.—Fort Worth 
2003, pet. denied). We do not need to resort to rules of construction or 
extrinsic aids to construe a statute that is clear and unambiguous. St. 
Luke’s Episcopal Hosp., 952 S.W.2d at 505; Cail v. Serv. Motors, Inc., 
660 S.W.2d 814, 815 (Tex. 1983). When a statute fails to define a term, we apply 
and use its plain meaning. See Tex. 
Gov’t Code Ann. § 312.002 (Vernon 2005) (instructing appellate court 
to use words’ ordinary meaning). We should not adopt a construction that would 
render a law or provision meaningless. Centurion Planning Corp. v. Seabrook 
Venture II, No. 01-02-00518-CV, 2004 WL 2823125, at *3 (Tex. App.—Houston 
[1st Dist.] Dec. 9, 2004, no pet. h.).
        Webster’s 
Dictionary defines the term “obligor” as “one that binds himself or gives 
his bond to another [or] one that places himself under a legal obligation.” Webster’s Third New International Dictionary 1556 
(3d ed. 1981). It defines “debtor” as “one indebted to another [or] . . . 
one under obligation to another.” Id. at 583. The statute clearly lists 
“obligors” or “debtors” or persons owning interests in real or 
personal property in the disjunctive such that any one of those persons is 
authorized to bring a cause of action for a fraudulent lien or fraudulent claim. 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 12.003(a)(8). The statute does not require the “obligor” or “debtor” 
to also be a person owning an interest in the real or personal property. 
If we were to read an ownership requirement into the statute, as Armstrong 
urges, then the language clearly including persons owning real or personal 
property would be unnecessary and superfluous. We therefore hold that one who is 
liable as an obligor or debtor on the underlying debt, whether a property owner 
of the encumbered property or not, may pursue a cause of action under the 
fraudulent lien or claim statute. See Centurion Planning Corp., 2004 WL 
2823125, at *4. Thus, so long as Taylor showed that it was an obligor or debtor 
of the debt represented by the lien Armstrong filed, it had standing.
        The 
uncontroverted evidence at trial showed that Taylor had contractually agreed to 
indemnify and hold the church harmless from any and all claims or liens asserted 
against the church or against its property arising out of Taylor’s work. 
Armstrong’s own counterclaim against Taylor asserts that Taylor owes it the 
balance. The uncontroverted evidence and Taylor’s admission that it owed 
Armstrong some balance on the supplies lead us to conclude that Taylor owed some 
debt to Armstrong and was contractually obligated to remove, pay to remove, and 
indemnify the church against any liens or claims filed against the church’s 
property. Because of this contractual obligation imposed on or agreed to by 
Taylor, we conclude and hold that Taylor was an obligor or debtor entitled to 
pursue a cause of action against Armstrong under the fraudulent lien or claim 
statute even though it was not the actual property owner against whose property 
the liens had been filed. We overrule Armstrong’s fourth point.
        Because 
we have determined that Taylor is an appropriate party to bring a fraudulent 
lien or claim as a cause of action, we turn now to Armstrong’s third point 
that challenges the sufficiency of the evidence to support recovery under the 
fraudulent lien or claim statute. Again, it is unclear whether Armstrong is 
asserting a legal or factual insufficiency challenge, but because it repeatedly 
claims that there is “insufficient evidence,” we will apply a factual 
sufficiency review.
        Jury 
question eighteen asked the jury if it found that Armstrong presented a document 
to the Denton County Clerk with knowledge that such document would create a 
fraudulent lien or claim against the property with the intent that the document 
be treated as a valid lien against the property. As to the Flower Mound Project, 
the jury answered “yes.” Armstrong says that there is insufficient evidence 
to show that it knew it was filing a fraudulent lien or that it did so with 
intent to cause harm.
        The 
evidence shows that the lien filed against the Flower Mound Project on October 
10, 2001 claimed $12,452.04 under oath. One of Armstrong’s employees admitted 
in his deposition testimony that the $12,452.04 amount did not reflect 
Taylor’s $7,732.99 payment dated September 24, 2001 that had already been 
received. Although this same employee modified his testimony somewhat later at 
trial to say that he did not know when Armstrong received the check, his 
deposition testimony is evidence of Armstrong’s knowledge that, at the very 
least, the amount claimed in the mechanic’s and materialmen’s lien was 
incorrect. Thus, not only had Armstrong filed a lien against the church 
property, but it also knowingly claimed an erroneous amount while holding 
Taylor’s check for over half the balance.
        As 
to the “intent to cause injury” prong of a fraudulent lien claim, Taylor 
points to a letter written by one of the Armstrongs to Taylor that on one hand 
threatens the filing of the liens yet states, “[w]e do not wish you any harm 
in your business.” Taylor says this is at least some evidence that Armstrong 
was aware of the potential harm filing a lien on any of the church property 
could have on Taylor. Further, there was substantial testimony that Taylor made 
Armstrong aware of not only the importance of timely delivery but also made 
Armstrong aware of Taylor’s exposure to financial loss due to Armstrong’s 
failure to timely perform. Specifically, Gary testified to prior problems with 
Armstrong on earlier projects so that he was careful to go over the 
specifications for these two projects as well as the short time frame. He let 
Nichol know that the short delivery dates were “critical” to the two church 
projects and that Taylor would be subjected to a penalty on a sliding scale if 
deliveries were delayed. Nichol also knew that timely deliveries were essential 
to Taylor’s ability to successfully bid on the projects. We believe this 
evidence is sufficient to support the intent prong of a fraudulent lien claim.
        Based 
on this evidence, we must conclude that there was factually sufficient evidence 
to support the jury’s finding on the fraudulent lien filing. We overrule 
Armstrong’s third point.
Attorney’s Fees—Successful Party on Appeal
        In 
Taylor’s sole issue on appeal, it challenges the jury’s award of 
attorney’s fees against it and in favor of Armstrong on Taylor’s claim to 
recover the outstanding balance due it under the Taylor-Armstrong agreements or 
under a quantum meruit theory. In particular, Taylor argues that it was 
error to award Armstrong its attorney’s fees ($57,567.50) under section 38.001 
of the civil practice and remedies code because Taylor, not Armstrong, was the 
successful party in the litigation. See Tex. Civ. Prac. & Rem. Code Ann. § 
38.001. On the other hand, Armstrong argues that because it was allowed an 
offset against the Taylor recovery for the unpaid balances due from Taylor, it 
too was a successful or prevailing party under the code.
        The 
issue of whether a party is entitled to recover attorney’s fees is a question 
of law for a court to determine. Holland v. Wal-Mart Stores, Inc., 1 
S.W.3d 91, 94 (Tex. 1999); Vingcard A.S. v. Merrimac Hospitality Sys., Inc., 
59 S.W.3d 847, 867 (Tex. App.—Fort Worth 2001, pet. denied); Jackson Law 
Office, P.C. v. Chappell, 37 S.W.3d 15, 23 (Tex. App.—Tyler 2000, pet. 
denied). Because it involves a purely legal question, we review the availability 
of the award de novo. Holland, 1 S.W.3d at 95.
        A 
party may recover reasonable attorney’s fees in addition to the amount of a 
valid claim and costs if the party’s claim is for services rendered, labor 
performed, or materials furnished, or if the claim is for an oral or written 
contract. Tex. Civ. Prac. & Rem. Code 
Ann. § 38.001(1),(2), (3), (8). To recover attorney’s fees under 
section 38.001, a party must (1) prevail on a cause of action for which 
attorney’s fees are recoverable and (2) recover damages. Tex. Civ. Prac. & Rem. Code Ann. § 
38.001; Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Alma 
Group, L.L.C. v. Palmer, 143 S.W.3d 840, 845-46 (Tex. App.—Corpus Christi 
2004, pet. denied). Taylor says that Armstrong did neither.
        According 
to our Hawkins opinion, we are to look to which party prevailed on the 
main issue. Hawkins v. Ehler, 100 S.W.3d 534, 544 (Tex. App.—Fort Worth 
2003, no pet.); see also State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 
430, 437 (Tex. 1995). The prevailing party is the party who is vindicated by the 
judgment rendered. Brown v. Fullenweider, 135 S.W.3d 340, 347 (Tex. 
App.—Texarkana 2004, pet. denied); Flagship Hotel, Ltd. v. City of 
Galveston, 117 S.W.3d 552, 565 (Tex. App.—Texarkana 2003, pet. denied). 
The determination of who is the prevailing party should focus on who was 
successful on the merits. Flagship, 117 S.W.3d at 565. If multiple 
parties receive judgment, “the party which received judgment on the ‘main 
issue’ is the prevailing party.” Id. But a party may be entitled to 
recover attorney’s fees even “if the amount recovered on the claim is 
entirely offset by an amount awarded on an opposing party’s claim.” Blizzard 
v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 806 (Tex. App.—Dallas 
1988, no writ); see also McKinley v. Drozd, 685 S.W2d 7, 10 (Tex. 1985) 
(discussing and abolishing the “net recovery” rule in context of article 
2226 claims for attorney’s fees, the predecessor to section 38.001).
        Taylor 
contends that Armstrong was not a prevailing party. According to Taylor, we 
should look to see who is the one who “successfully prosecutes the action or 
successfully defends against it, prevailing on the main issue, even though not 
necessarily to the extent of his original contention.” Taylor contends that it 
prevailed on the main issue—whether Armstrong had represented that it would 
provide materials by specified times and failed. Also, Taylor contends that 
because it never denied or contested whether Armstrong actually supplied 
materials or their value, Armstrong really prevailed “on none of its 
claims.” Because Taylor admitted that it had withheld the $6,110 offset amount 
the jury awarded to Armstrong and Taylor’s recovery was in excess of $27,500 
(more than four times Armstrong’s recovery), Armstrong really recovered 
nothing. Therefore, it recovered no damages and was thus not entitled to 
attorney’s fees.
        We 
know that the jury found that Taylor was successful in virtually all of its 
claims against Armstrong. It found that Armstrong had breached its contract to 
Taylor on both projects, that Armstrong had committed fraud against Taylor 
regarding delivery dates, that Armstrong had breached a warranty made to Taylor 
thereby violating the DTPA, and that Armstrong had fraudulently filed a lien 
against one of the church projects, entitling Taylor to a $10,000 statutory 
penalty. Moreover, the trial court held both liens void and released both of 
them. Thus, Taylor was unsuccessful only with regard to the statutory penalty on 
one of the fraudulent lien claims against it and the jury’s failure to find 
malice against Armstrong in connection with its DTPA claim.
        We 
also know, however, that Taylor withheld a portion of the amounts Armstrong had 
billed it under their contracts. And Taylor contended it properly withheld funds 
for the liquidated damages that Armstrong would owe it for Armstrong’s failure 
to timely deliver materials. Taylor contends that it never contested liability 
for or compensability of the balance, only whether there would ultimately be any 
money due Armstrong in light of Taylor’s claims for breach of contract and 
liquidated damages. In support, Taylor points to the jury’s award of 
liquidated damages to it on each project.
        Armstrong, 
on the other hand, points to its offset to justify the award of attorney’s 
fees in its favor. Armstrong points to the jury’s findings that Armstrong had 
rendered compensable work on the Denton Project in the amount of $3,465 and 
compensable work on the Flower Mound Project in the amount of $11,153.70. After 
applying appropriate payments already made by Taylor, the trial court’s 
judgment reflected an offset in Armstrong’s favor in the amount of 
$6,110—the amount Taylor withheld—yet awarded Armstrong $57,567.50 in 
attorney’s fees. In contrast, the trial court’s judgment awarded $4,356.17 
to Taylor for Armstrong’s breach of contract, $10,000 for Armstrong’s filing 
a fraudulent lien, $13,262 for Armstrong’s fraud, $45,000 in attorney’s 
fees, and $2,193.34 in costs.
        Because 
Taylor conceded the issue of the amount that it had not yet paid to Armstrong, 
it is difficult to see how Armstrong incurred attorney’s fees in pursuing 
its claim against Taylor. Armstrong’s attorneys testified that the fees 
incurred were for the benefit of both Armstrong and Pat Stokes, a party no 
longer involved in the litigation. Plus, that evidence shows that the 
attorney’s fees were incurred in securing the liens—which were found to be 
fraudulent and void—and in defending against the claims Taylor was pursuing. 
Moreover, when the litigation is considered in its entirety, we can come to only 
one conclusion: that Taylor was successful in pursuing the main issue litigated 
in this case—whether Armstrong knew and represented that it could meet 
specific delivery dates and failed. Therefore, we conclude and hold that Taylor 
was the prevailing party entitled to recover attorney’s fees under section 
38.001 and that Armstrong was not. For this reason, we sustain Taylor’s sole 
point and reverse the trial court’s award of $57,567.50 in attorney’s fees 
to Armstrong and render judgment that Armstrong take nothing on those fees.
Conclusion
        Having 
overruled all of Armstrong’s points and sustained Taylor’s sole point, we 
reverse the award of attorney’s fees to Armstrong and render judgment that 
Armstrong take nothing on its claim for attorney’s fees. We affirm the trial 
court’s judgment in all other respects.
  
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
      

 
PANEL 
B:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
DELIVERED: 
June 9, 2005

 
NOTES
1.  
Although the jury concluded that only the Flower Mound Project lien was 
fraudulently filed, the trial court held both liens void in its final 
judgment.  Armstrong has not challenged that part of the judgment.